[No. 4473.]

## B. B. TITCOMB *v.* J. T. KIRK.

ACTS OF CONGRESS CONCERNING MINERAL LANDS AND DITCHES. — The provisions of the act of Congress, approved July 26, 1866, "granting the right of way to ditch and canal owners over the public lands, and for other purposes," and the act amendatory thereof, approved July 9, 1870, and the "Act to promote the development of the mineral resources of the United States," approved May 10, 1872, must be considered and construed together; and said acts merely confirm to the owners of mining claims and ditches and water rights on the public lands of the United States the same rights which were accorded to them by the local customs, laws and decisions of the courts prior to the passage of said acts.

IDEM.—There is nothing in said acts which grants to the owners of ditches on the public lands any right not "recognized and acknowledged by the local customs, laws and the decisions of the courts."

Idem.—Said acts do not authorize a person engaged in the construction of a ditch for the conveyance of water to excavate it across the mining claim of another which was located before the ditch was located.

Appeal from the District Court, Fourteenth Judicial District, County of Placer.

The gold fields on the Pacific coast, and on the eastern slopes of the Rocky Mountains, were situated on the public lands of the United States. These fields were also in mountainous districts, through which flowed numerous rivers and small streams of water. This water was necessary to separate the gold from the earth. It had to be turned, by means of ditches, from the beds of the rivers, cañons, and ravines, where it flowed, upon the sides and summits of the hills and mountains, where the deposits of gold-bearing earth were found. These ditches or canals, many of them, extended for twenty, thirty and forty miles, and cost hundreds of thousands of dollars each, and were built by capitalists for the purpose of conveying and selling water to the owners of mining claims. Others were shorter, and were dug by claim owners for the purpose of conveying smaller quantities of water to particular claims. The water was at first used by conducting a few inches from the ditches into sluice-boxes with riffles on the bottom and then shoveling the earth into the boxes, where it was dissolved by the water, and, being carried down by the current, left the gold on the bottom. This method of work could only be used where the earth above the bed-rock was shallow—say from six inches to six feet in depth. Claims of this character were soon exhausted. To work the more extensive and deep deposits, where the earth and gravel are from ten to three hundred feet in depth, the "hydraulic process," as it is called, was adopted. To work by this process the ditch must have considerable altitude above the mining claim. The water is turned into an iron pipe, and is ejected from a nozzle at the lower end of the pipe under a pressure of from one to three or four hundred feet against the bank of gold-bearing earth.

Conflicts soon began to take place between the owners of

mining claims, the owners of ditches, and the owners of mining claims and ditches. These were settled (before the organization of courts) by miners' meetings, and in a short time customs were in force regulating, not only the size of mining claims, but the conflicting rights of miners and ditch owners. The rule established was that of priority—first in time, first in right. The Legislature then provided that, in actions concerning mining claims, proof should be admitted of the customs in force at the diggings, and that such customs should be the law when not in conflict with the laws and Constitution of the State. The courts also adopted the same rule of decision. By this rule, the constructor of a ditch could not excavate it across a mining claim which had been located before the location of the ditch, without the consent of the miner. The location of a ditch consisted in placing written notices at or near its head, and marking out its general route. When this was done, the ditch acquired a right of way, provided its projectors immediately proceeded in good faith to excavate the same and appropriate the water. By the United States statutes in force, both miners and ditch owners were trespassers on the public lands, and could have been removed by the military. The Government, however, did not interfere, nor did Congress pass any act upon the subject until 1866. Then the act of July 26, 1866, referred to in the opinion, was passed. This act was amended in 1870, and in 1872 an "Act to promote the development of the mineral resources of the United States" was passed.

These acts contain the expression of the sovereign legislative will regarding the general right of possession of the public lands in the mineral regions. Section one of acts of 1866 and 1872 (see 1 R. S. U. S., Sec. 2319) provides that "all valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase by citizens of the United States * * * under regulations prescribed by law, and according to the local customs or rules of miners * * * not inconsistent with

the laws of the United States." Section three of the act of 1872 (1 R. S. U. S., Sec. 2322) further provides in respect to vein, lode or ledge mines, prior to patent obtained, that they  *   *   *   "shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations (the extent of which is particularly described)," and gives also the right, and provides the method of obtaining title thereto by patent. Section twelve of the act of 1870 (R. S. U. S., Sec. 2329) provides that "claims usually called 'placers,' including all forms of deposits, except veins of quartz or other rock in place, shall be subject to entry and patent under like circumstances and conditions, and upon similar proceedings as are provided for vein or lode claims," etc.

Section nine of the act of 1866 (See 1 R. S. U. S., Sec. 2339) provides that "whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed." The section further provides for liability for damage done to the possessions of settlers on the public domain in the construction of ditches and canals. The possessions of settlers last mentioned are defined to be "homesteads" on lands which are "agricultural" and not "mineral," situate within the mineral regions. (Secs. 10 and 11, act 1866.) By section seventeen (act 1870, R. S. U. S., Sec. 2340) it is provided that "all patents granted, or pre-emption or homesteads allowed, shall be subject to any vested rights and accrued water rights, or rights to ditches and reservoirs used in connection with such water rights, as may have been acquired under or recognized by the preceding section." It is also provided (Sec. 16, act 1872, R. S. U. S., Sec. 2344) that "nothing contained in this act shall be construed to impair in any way rights or interests in mining property acquired under existing laws."

The case at bar was thus : In the year 1873, the plaintiff located and constructed a ditch for the conveyance of water from the south fork of Shirt-tail Cañon to Georgia Hill, in the county of Placer. The ditch was about seventeen miles in length and cost about eighteen thousand dollars, and would carry one thousand inches of water. At a point on the line of the ditch, about five miles below its head, the defendant owned a mining claim one thousand feet in width, across which the ditch was excavated. This claim was from thirty to fifty feet or more in depth, and it could be worked only by "hydraulic process." The claim was located more than ten years before the ditch was located. In the winter of 1873-4, the defendant, by means of water, washed away the ditch for a distance of about one hundred feet where it crossed his claim, and washed away the soil underneath to the depth of about twenty feet. The plaintiff constructed a flume over this space, in which the water flowed, but the defendant threatened to destroy it. The defendant washed away the ditch in the ordinary working and development of his mine. The plaintiff brought this action for damages, and to obtain an injunction. The court below rendered judgment for the defendant, and the plaintiff appealed.

*B. F. Myres and J. M. Fulweiler*, for the Appellant.

The appellant should have had judgment in accordance with the prayer of complaint, under the acts of Congress entitled "An Act granting the right of way to ditch and canal owners over the public lands and for other purposes," approved July 26, 1866, and an act amendatory thereof, approved July 9, 1870.

Such construction should be given to the statute as to make it operative, and to accomplish and carry out the intent of Congress in enacting it. (See *Binney* v. *Chesapeake and Ohio Canal Co.*, 8 Pet. 201, 212 ; *Moran* v. *Miami County*, 2 Bl. 722 ; *Wigg* v. *United States*, Dev. 157 ; *Beatty* v. *United States*, Id. 157 ; *Chase* v. *United States*, Id. 158 ; *Ogden* v. *Strong*, 2 Paine, 584; and 28 Cal. 142; 32 Id. 499; 22 Id. 11; 34 Id. 92.)

" An interpretation which gives effect is preferred to one which makes void." (See Civil Code, 3541, 3542.)

" *Ea est accipienda interpretatio quæ vitio curet.*" We say, therefore, that the court erred in its conclusions of law, as the interpretation, as given by the court, of the acts of Congress referred to in complaint, would make the said acts void and inoperative, and defeat the intent of Congress ; as a grant of right of way that can be defeated at any time at the will of a third party, not a party to the grant, or in any way bound by its conditions, is no right of way at all.

The right of way over the public lands of the United States becomes vested absolutely in the ditch owner upon the construction of his ditch. (See *Cook* v. *Hamilton County*, 6 McL. 152.)

The acts of Congress referred to were intended for the benefit of mining and agricultural interests, and individual interests should bear the consequential injuries resulting from the construction of the ditch, in return for the general benefit arising therefrom. But the act itself recognizes the equity of the prior appropriation under the laws of Congress by giving the settler a right of action for damages resulting from the construction of the ditch. (See Yale on Mining Claims and Water Rights, pp. 210, 211.)

*Hale & Craig*, for the Respondent.

The act of July 26, 1866, the amendatory act of 1870, and the act of 1872, should be construed together, and the three acts are only intended to fix the rights of ditch owners and the owners of mining claims, as they then stood, by local customs and the decisions of our courts.

For more than twenty years this court has, by a long and unbroken series of concordant decisions (so numerous and harmonious, indeed, that special citation would be a work of supererogation), settled the question here of vested and accrued rights as between plaintiff and defendant. We only cite a passage from the opinion rendered in *Crandall* v. *Woods* (8 Cal. 143), which was rendered in 1857, as a fair expression and type of the whole. Chief Justice Murray, who delivered the opinion of this court, said : " One who

locates upon public lands with a view of appropriating them to his own use becomes the absolute owner thereof as against every one but the Government, and is entitled to all the privileges and incidents which appertain to the soil, subject to the single exception of rights antecedently acquired. * * * If he admits that he is not the owner of the soil, and that the fact is established that he acquired his rights subsequent to those of others, then, as both rest alike for their foundation upon appropriations, the subsequent locator must take subject to the rights of the former, and the rule *qui prior est in tempore potior est in jure* must apply." No decisions of this court of contrary import to the above can be found.

By the COURT:

Appellant urges that he should have had judgment, in accordance with the prayer of his complaint, under an act of Congress entitled "An Act granting the right of way to ditch and canal owners," approved July 26, 1866, and an act amendatory thereof, approved July 9, 1870.

The provisions of the statutes referred to and of the "Act to promote the development of the mineral resources of the United States," approved May 10, 1872, should be considered and construed together ; and it is apparent that it was the purpose of the legislation, taken as a whole, to recognize in, and confirm to, the respective classes of licensees therein mentioned the same rights which were accorded to them by the State courts prior to the passage of the acts of Congress.

There is nothing in the ninth section of the act of 1866 which requires of us to hold that the defendant's right to possess and enjoy his mining claim must be subordinated to the right of plaintiff to construct his ditch. The clause in the ninth section, "and the right of way for the construction of ditches and canals for the purposes aforesaid is hereby acknowledged and confirmed," cannot be construed to enlarge the grant to ditch owners, so as to include a right *not* "recognized and acknowledged by the local customs, laws and the decisions of the courts." Nor does the *proviso*

authorize the construction of a ditch or canal across the mining claim of another, whatever may be its effect in respect to "settlers" on agricultural lands of the United States.

Judgment and order affirmed.

Mr. Justice RHODES expressed no opinion.