Argued 6 May, decided 25 June, 1907.

## MONTGOMERY v. SOMERS.

90 Pac. 674.

EVIDENCE—DAMAGES—CONCLUSION OF WITNESS.

1. Though a witness may state the facts upon which an alleged damage is predicated, he should not be allowed to give his opinion as to the amount of damages resulting from a given act, that being for the jury to determine.

SAME—HARMLESS ERROR.

2. Error in an action for trespass to land, in allowing a witness to give his opinion as to the amount of damages resulting from the trespass, was harmless, it appearing that the incompetent testimony did not influence the verdict.

SAME—PRESUMPTION THAT TESTIMONY WILL SUPPORT VERDICT.

3. Where, in an action for damage to a growing hay crop by trespass, defendant's bill of exceptions to the ruling admitting testimony as to the value of the crop did not contain all the evidence, and there was no statement that testimony was not offered to show how many tons of hay the crop would have made, had it not been injured, or the cost of harvesting, it must be presumed that there was such testimony introduced sufficient to support the verdict.

DEDICATION—HIGHWAYS—PUBLIC LANDS—ACT OF CONGRESS CONSTRUED.

4. Section 2477, Rev. St. U. S. [U. S. Comp. St. 1901, p. 1567], granting a right of way for highways over public lands not reserved for public uses, is an express dedication of a right of way, and an acceptance of the grant while the land is a part of the public domain may be effected by public user alone, without any action of the public highway authorities, and, when an acceptance thereof has once been made, the highway is legally established, and is thereafter a public easement upon the land, and subsequent entrymen and claimants take subject to such easement.

TRESPASS—TRIAL—INSTRUCTIONS.

5. Where, in trespass to land, defendants relied upon its user for several years as a highway while the land was public domain, an instruction that by United States statute a right of way for highways is granted over public lands, and long-continued user by the pubic is "sufficient" to establish an acceptance of the grant, was not objectionable as declaring long-continued user "essential" to the establishment of the highway.

INSTRUCTION—TRAIL OR DEFINITE PATH A PUBLIC HIGHWAY.

6. An instruction in trespass that if, while the land over which a trail lies was public land, the public "for a long period, viz., ten years or more," used as a public highway a definite path, it thereby became a public highway, was not objectionable as declaring such user necessary to the establishment of a highway.

HIGHWAYS—PRESCRIPTIVE RIGHT—WIDTH.

7. Where the right to a highway depends solely upon user by the public, its width is measured by the extent of the user; but the public will not be confined to the track made by vehicles, etc. And, on the other hand, the public cannot acquire a precriptive right to pass over land generally; but the user must be by way of a certain well-defined line of travel, not including, however, all the land over which loose stock being driven travel promiscuously, though in a generally uniform direction.

SAME—NOT REVERSIBLE ERROR TO INSTRUCT.

8. Though the extent of user and reasonable width of a highway claimed by the public is generally for the jury, where defendants justified a trespass to land on user for several years by drovers, etc., as a highway, while it was public domain, in view of Section 4790, B. & C. Comp. (Laws 1903, p. 267), providing that all county roads shall be 60 feet wide, etc., it was not reversible error to instruct that, if the trail was a legal highway, it must be considered of reasonable width for the convenient use of the public, not exceeding 60 feet.

From Wallowa: ROBERT EAKIN, Judge.

Action by William Montgomery against E. P. Somers for trespass.

From a judgment in favor of plaintiff, defendant appeals.

AFFIRMED.

Statement by MR. COMMISSIONER SLATER.

On February 2, 1906, plaintiff and his lessor settled upon, and entered as homesteads, under the laws of the United States, adjoining tracts of land lying in the eastern part of Wallowa County, in a deep and precipitous canyon on the Im-

naha River. From the year 1896, and prior to plaintiff's entry and settlement, stockmen and the public generally had been traveling up and down this canyon driving herds of cattle, horses, and sheep to and from the grazing territory, by which travel trails had been made along the borders of this river and across the small level places or river bottoms in the canyon. These settlers were engaged in raising stock, and by means of a few acres of tillable land were enabled to raise a few tons of hay to sustain their stock through a stress in winter. In May, 1906, plaintiff had fenced in and under cultivation and sown to grain for hay, two or three of these flats or bottoms, including some land he had leased, in all about 11 acres, besides some land upon the hillside was inclosed to save the grass for winter pasturage. In fencing his land, plaintiff left a passageway, 16 to 20 feet wide, along the bank of the stream for a way for the public. On the 20th of May, 1906, defendant's servants and employes were driving 2,000 head of his sheep along this canyon, and on coming to plaintiff's premises the sheep refused to go along the roadway left by plaintiff for passage, and some of them broke through into his inclosure, and those in charge of them drove all of the sheep through and across plaintiff's inclosures, destroying a portion at least of his crop, for which plaintiff brought this action in trespass, demanding damages to the amount of $150. The defendant answered, denying all of the complaint, excepting he admitted that he was the owner of the sheep which did the damage, and by an affirmative answer he claimed that, long prior to the plaintiff's settlement on the land, a legal highway had been located and established and existed at, over, and across the inclosed premises where the sheep had been driven, and that plaintiff in fencing the land had unlawfully closed up the highway. The reply put at issue these affirmative allegations of the answer. During the course of the trial, the court permitted the plaintiff to testify, over defendant's objections, that the aggregate amount of damages to him, caused by defendant's alleged trespass, was at least $150, and that he could not possibly replace the amount

cf hay destroyed for less than that amount; and also permitted one George Houser likewise to testify, over defendant's objections, that plaintiff was damaged $200 or $300. This verdict was for plaintiff in the sum of $65, on which judgment was entered, from which defendant appeals, assigning as errors the admission of the testimony mentioned, besides objections to the court's instruction.

For appellant there was a brief and an oral argument by *Mr. D. W. Sheahan.*

For respondent there was a brief and an oral argument by *Mr. J. A. Burleigh.*

Opinion by MR. COMMISSIONER SLATER.

1. It is unquestionably the settled law of this State that in actions of this character, while a witness may state the facts upon which the damage is predicated, he cannot give his opinion as to the amount of the damages resulting from a given act, because it is the exclusive provinces of the jury to ascertain from the facts given in evidence the amount of damages, under the rules of law given to them by the court: *Burton* v. *Severance,* 22 Or. 91 (29 Pac. 200); *Chan Sing* v. *Portland,* 37 Or. 68 (60 Pac. 718); *United States* v. *McCann,* 40 Or. 13 (66 Pac. 274); *Pacific Live Stock Co.* v. *Murray,* 45 Or. 103 (76 Pac. 1079). For this reason the court erred in permitting, over defendant's objection, the plaintiff and witness Houser to give their opinion as to the amount of plaintiff's damages; but it does not necessarily follow that for that reason the judgment must be reversed. If it clearly appears from the record that the incompetent testimony admitted did not influence the verdict, it will not be cause for reversal: *Heneky* v. *Smith,* 10 Or. 349 (45 Am. Rep. 143); *French* v. *Cresswell,* 13 Or. 418 (11 Pac. 62); *Strickland* v. *Geide,* 31 Or. 373 (49 Pac. 982); 13 Cyc. 193.

The record discloses that the plaintiff claimed damages to the amount of $150, and after having testified about the condition of the crop, and the amount destroyed, and the value,

he was permitted to testify that his damages amounted to that much at least, while Houser testified that they were as much as $200 to $300; and he also gave testimony of the condition of the crop and the value of hay to a person in the position that plaintiff was, but the verdict was for only $65. The jury could not have found that plaintiff was entitled to only $65 if they had given any weight to the opinion evidence of either of these witnesses. There was no counterclaim or offset pleaded by which the jury could have reduced, to the amount of the verdict, the estimate of damages made by plaintiff or Houser when testifying. At the same time, there was other and competent testimony from which they may have, and no doubt did, frame their verdict. The case of *French* v. *Cresswell,* 13 Or. 418 (11 Pac. 62) in one respect is very similar to this action. Mr. Justice THAYER, at page 424 of 13 Or. (page 64 of 11 Pac.), says:

"We have noticed the exceptions taken to the admission of testimony regarding the amount of damages sustained by the respondent in consequent of the sheep feeding upon the land, and agree with the appellant's counsel that many of the questions asked the witness upon that subject were informal; but the verdict was so small that we have concluded that the appellant could not have been materially injured on account of it. If the respondent was entitled to any verdict at all, she was certainly entitled to the amount recovered."

2. Error is also assigned to the effect that all the witnesses, including plaintiff, were permitted to testify as to what was the value of the hay crop as if the same had been raised, harvested, and ready for use in feeding season, while it was alleged and admitted that the crop was a growing crop, and that no allowance or deduction was made for the necessary expense and trouble of raising and harvesting the crop.

3. To support this contention, it is asserted that no testimony whatever was offered to show how many tons of hay the crop would have made, if not injured, or what the cost of caring for and harvesting the same would have been. No testimony to that effect appears in the record, it is true; but the bill of

exceptions, however, does not purport to contain all of the evidence, but only "a sufficient amount to explain the exceptions," and there is no statement therein to the effect that no such testimony as asserted was offered. Unless it affirmatively appears in the record to the contrary, it must be presumed, therefore, that there was testimony of that character introduced sufficient to support the verdict.

4. The defendant at the trial offered proof tending to show that, for several years prior to the entry and settlement by plaintiff and his lessor of the lands alleged to have been trespassed upon, and while the same were vacant, unappropriated public lands of the United States, the portion thereof over which defendants' sheep passed had been used for a road or trail for the passage of all kinds of public travel, except wheeled vehicles; that it had been during all those years habitually and continuously used as a road over which passed persons on foot and on horseback, such as stockmen, ranchers, miners, prospectors, and in fact any and all persons who had occasion to travel in or through that vicinity, especially stock raisers and drovers in driving large bands of stock, such as horses, cattle, and sheep, to and from the public ranges above and below those lands; that said road or trail lies in a very deep, narrow, canyon, sometimes called a "box canyon," through which runs the Imnaha River; that along the sides or bluffs of this canyon are high perpendicular cliffs or walls of rock, commonly called "rim rock," running parallel to the river, and which naturally confine the travel to the narrow bottoms and lower edges of the cliffs, and between the "rim rock" and the river; that it had been thus continuously used as such road by the general public long before and up to the time the lands alleged to have been trespassed upon were entered or settled upon; that on account of the narrow space of ground upon which it was practicable to travel, the road or trail became a well-worn and well-defined line of travel; that the road had been recognized as a public highway by the public and road authorities from the year 1896 to the time it was obstructed

by plaintiff; that since 1896 the road supervisors of the road district, in which said road or trail is situated, caused work to be performed on this road, some upon and along the lands alleged to have been trespassed upon; that the width of the line of travel varied through these lands.

In some places it was confined to one path or trail, on account of the proximity of the rim rocks to the river; while at other places, where there were small flats or bottoms, the line of travel would broaden out and cover almost all the level ground, which the testimony showed to be on those flats not more than 75 yards wide. Proof was also offered tending to show that the road ran right through the middle of those flats, and would take about all of them, not less than 60 feet in any place on those flats, but generally a great deal more, especially when a band of loose stock were driven along there, in which cases the stock would spread out and cover all the flats; that the travel on this road or trail was continuous, uninterrupted, and unobstructed until the fall of 1905, when plaintiff settled there and inclosed three of those little flats, by building wire fences connected with the rim rocks in such manner as to form a separate inclosure of each flat, and at the same time obstruct and inclose the road where it ran across each flat, and forced the travel to leave the old road and pass along a narrow passageway from 16 feet to 20 feet wide next to the bank of the river. Upon this testimony the court's instructions were based. Defendant excepted to the words "long-continued user," used by the court in its third instruction, which is as follows:

"But by Rev. Stat. U. S. § 2477 (U. S. Comp. St. 1901, p. 1567), a right of way for the construction of highways is granted over public lands of the United States, and long-continued user by the public is sufficient to establish that the United States' grant of the way has been accepted by the public."

Defendant also excepted to the words "for a long period, viz., 10 years or more," used by the court in the fourth instruction, which, in part, is as follows:

"And if you find that, while this land over which the trail

lies was United States lands, the public for a long period, viz., 10 years or more, used as a public highway a definite path or trail as a means of passage from one point to another, then I instruct you that such trail became thereby a public highway," etc.

Based on these exceptions, error is assigned.

5. The act of Congress referred to by the court is an express dedication of a right of way, and an acceptance of the grant, while the land is a part of the public domain, may be effected by public user alone, without any action on the part of the public highway authorities. When an acceptance thereof has once been made, the highway is legally established, and is thereafter a public easement upon the land, and subsequent entrymen and claimants take subject to such easement: *Wallowa County* v. *Wade,* 43 Or. 253 (72 Pac. 793); *McRose* v. *Bottyer,* 81 Cal. 122 (22 Pac. 393); *Smith* v. *Mitchell,* 21 Wash. 536 (58 Pac. 667); *75 Am. St. Rep.* 858). When the general public enter upon public lands not reserved for public use, for the purpose of appropriating a definite portion thereof for a highway, or to lay out or construct a highway for public use they do so with the consent of the owner previously given by express dedication. Under such circumstances, the duration of the user is not material, so long as it is sufficient to clearly assert an intention on the part of the general public to make such appropriation; but when there is no express dedication, and user is relied upon to raise a presumption of dedication, the entry is presumed to be against the consent of the owner, and the duration of the user is then material. The law upon this question has been well stated as follows:

"Except when user is relied on to raise a presumption of dedication, the duration of the user is wholly immaterial. It is not necessary that such user should continue any definite length of time.  *  *  While no dedication will be presumed from user alone, unless the user has been so long and so general that the public convenience would be materially affected by its interruption, no such requirement applies strictly as to the user which constitutes the acceptance of a dedication otherwise established; it being only necessary that those who would

naturally be expected to enjoy it do, or have done so, at their pleasure and convenience": 13 Cyc. 465, 466.

The court, when using, in the third instruction, the language to which objection is made, has not declared "long-continued user" essential to establishment of the highway; but the language of the instruction is "long-continued user by the public is sufficient," which is undoubtedly correct.

6. And, when giving the fourth instruction, the court has not declared a user "for a long period, viz., 10 years or more," necessary to the legal establishment of the highway; but the court has said, in effect, that, if you find a user for that period of time, then such trail became a legal highway, and such is the law. The instructions were applicable to the testimony, for the record shows that the uncontroverted testimony was that the public had traveled along this route from prior to 1896, up to May, 1906, when the damage was done. But if it could be fairly said that the jury may have understood the court to have meant by these instructions that such long-continued user was necessary to the legal establishment of the highway, yet it is plainly manifested by the verdict that they did not so interpret the instruction. They must have necessarily found that the highway claimed by the defendant did in fact exist, for the amount of their verdict is manifestly for the value of part only of the crop, that part not on the highway, otherwise the verdict must have been for a much larger amount. There was testimony that damage was done off of the track of the asserted highway, and the court also instructed the jury as follows:

"But even though you find that the trail is a legal highway, if you find that the defendant in so passing his sheep across plaintiff's fields, at the points complained of, permitted his sheep to do any unnecessary damages—that is, damages off the trail that could have been reasonably avoided—then, still defendant would be liable for such unnecessary damages."

In any event, therefore, neither of these instructions could have injured the defendant.

7. Objection was also made by defendant to the following

instruction: "If the trail was a legal highway, then it must be considered of reasonable width for the convenient use of the public, not to exceed 60 feet." The defendant contends that the limitation of 60 feet was erroneous. Where the right to a highway depends solely upon user by the public, its width and the extent of the servitude imposed on the land are measured and determined by the character and extent of the user, for the easement cannot on principle or authority be broader than the user. This does not mean, however, that the public will be confined to the precise portion of the soil on which the wheels of passing vehicles may run, commonly called the track: *Bayard* v. *Standard Oil Co.* 38 Or. 438 (63 Pac. 614: 13 Cyc. 488). While it is the general rule that the width of a highway established by user is limited to the ground actually used, the question is usually for the jury, giving proper consideration to the circumstances and conditions attending the use. *Bayard* v. *Standard Oil Co.* 38 Or. 438. On the other hand, the public cannot acquire a prescriptive right to pass over land generally, but the user must be by way of a certain well-defined line of travel: Elliott, Roads & Sts. (2 ed.) § 176: *Bayard* v. *Standard Oil Co.* 38 Or. 438 (63 Pac. 614). It would be unreasonable, however, to say that, where loose stock being driven travel promiscuously, although in a generally uniform direction, over a strip of land 75 to 100 yards in width, the user is thereby confined to a certain and well-defined line of travel, and that a right of easement attaches to the whole width thereof, because the claim is broader than the reasonable necessity of the case. The unreasonableness of the asserted claim is established by the fact shown by this record that, at other places on this same trail, the thread of travel is only a few feet in width, being confined and limited by the nature of the country to such smaller latitude.

8. While the extent of the user and the reasonable width of the highway is generally for the jury, we cannot say, under the facts of this case, that it was reversible error for the court to fix sixty feet as the maximum width beyond which they could not

go, in view of the provisions of the general law of this State, to the effect that all county roads shall be 60 feet in width, unless the county court shall, upon prayer of the petitioners, determine upon a different width not less than 40 nor more than 80 feet: Section 4790, B. & C. Comp. (Laws 1903, p. 267). County roads are for all kinds of travel, including wheeled vehicles, and it must be assumed that such width is ample for all purposes. It is therefore reasonable to say that such limit must be ample for the kind of travel passing along this trail. In view of the facts shown by the record, that stock traveling along this route scattered out and used the whole width of these bottoms, the court might well have submitted to the jury whether or not the 16 or 20 feet, not inclosed, but left by plaintiff for the use of the public, being a part of the traveled track, was not a reasonably sufficient width for the general purpose of the highway. While an entryman takes, subject to a previously established public easement, such as the one in question, and he may not obstruct or shift it, or interfere with it to the detriment of the public, yet such easement must necessarily be confined to a reasonable width; but, where an unreasonable width has been attempted to be appropriated, no right of the public has been encroached upon, if, in inclosing his land, an entryman leaves a reasonably sufficient width of the traveled track open for the use of the public.

Not finding any reversible error in the record, it follows that the judgment should be affirmed.    AFFIRMED.