**CLARK v. TAYLOR et al.**

No. 4129 Civ.

District Court of Alaska. Fourth Division. Fairbanks.
June 10, 1938.

300

Jack C. Winter, of Fairbanks, for plaintiff.

Ralph J. Rivers and Harry O. Arend, both of Fairbanks, for defendants.

PRATT, District Judge.

## I.

(a) This is an action of an equitable nature wherein the plaintiff, the owner of a placer mining claim known as the Spot Association, in the Innoko Precinct, Division aforesaid, prays that the defendants be restrained from causing the completion of a bridge and the construction of approaches thereto upon his said placer mining claim.

(b) The cause was submitted to the Court upon an agreed statement of facts, which showed the following:

The Spot Association was duly and regularly located as a placer mining claim, upon the 12th of June, 1912, and has been a valid, subsisting placer mining claim ever since. By virtue of mesne conveyances, the plaintiff was the lawful owner thereof during the calendar year 1937, and thereafter.

In 1917 the Alaska Road Commission, without any condemnation proceedings, established a public road over said Spot Association and built a wooden bridge, fourteen feet wide, over Ganes Creek thereon. This was done without any permission from the owner of the claim and adversely to him. At all times since the building of said road and bridge, the same has been in the actual, open, notorious, adverse, and uninterrupted use, against the owners of said Spot Association, as a right of way by the general public and has been classified by said Road Commission as a public wagon road. The road at first was narrow for use by sleds and wagons, but, in the years following 1917, was gradually widened so that said road "is now maintained at a width of between fifteen (15) and eighteen (18) feet to accommodate present requirements of traffic."

In October, 1937, the defendants, being the chief engineer and Innoko Precinct superintendent, respectively, of the Alaska Road Commission, caused the employees of said Commission to go upon said Spot Association, against the will of the plaintiff, and to commence the construction of a new bridge fifteen feet in width, adjoining the old bridge on the upstream side.

The defendants are about to cause the employees of said Road Commission to proceed with the completion of said bridge and to construct approaches thereto and connecting roads from the approaches to the old road on the claim and will so do unless restrained by order of Court. If the last mentioned acts would be an unlawful appropriation of plaintiff's land, "plaintiff would suffer irreparable injury and be without adequate remedy at law."

## II.

(a) It is first necessary to determine what, if any, right the Alaska Road Commission had to go upon the placer mining claim in 1917, adversely to the owner of the Spot Association, and lay out and maintain a road and bridge across the Association.

The Alaska Road Commission (Board of Road Commissioners for Alaska) was created by Act of Congress May 14, 1906, and given power, "to locate, lay out, construct, and maintain wagon roads and pack trails from any point on the navigable waters of said district [Alaska] to any town, mining or other industrial camp or settlement, or between any such town, camps, or settlements therein, if in their judgment such roads or trails are needed and will be of permanent value for the development of the district [Alaska]; but no such road or trail shall be constructed to any town, camp, or settlement which is wholly transitory or of no substantial value or importance for mining, trade, agricultural, or manufacturing purposes." Sec. 29, C.L.A.1913, 34 Stat: 192, 48 U.S.C.A. § 322.

It would be by virtue of powers set forth in the above-mentioned act and by virtue of the right of way granted by the act of Congress, to-wit, Section 2477, R.S.U.S., being Section 932 of Title 43 of the United States Code Annotated, wherein "the right of way for the construction of highways over public lands, not reserved for public purposes, is hereby granted," that the Alaska Road Commission must have acted in building the above-mentioned road in 1917.

(b) Alaska is primarily a mining country, and the laws of the United States relating to mining claims and rights incident thereto were expressly extended to Alaska by act of Congress of June 6, 1900, 31 Stat. 329, Sec. 129, C.L.A.1913, 48 U.S.C.A. § 381.

"All valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, are hereby

declared to be [shall be] free and open to exploration and purchase, and the lands in which they are found to occupation and purchase * * *." Act of Congress, May 10, 1872, amended May 5, 1876, 19 Stat. 52, § 2319, R. S.U.S., 30 U.S.C.A. §§ 22, 49.

"The locators of all mining locations * * * situated on the public domain, their heirs and assigns * * * shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, * * *." Act of May 10, 1872, R.S.U.S. § 2322, 30 U.S.C.A. § 26.

The last mentioned act was with reference to quartz claims, but Section 2329, R.S.U.S., 30 U.S.C.A. § 35, provides that placers shall be subject to entry and patent under like circumstances and conditions and upon similar proceedings, as are provided for vein or lode claims.

As stated by the Supreme Court of the United States in Cole et al. v. Ralph, 252 U.S. 286, 40 S.Ct. 321, 325, 64 L.Ed. 567: "A location based upon discovery gives an exclusive right of possession and enjoyment, is property in the fullest sense, is subject to sale and other forms of disposal * * *."

In 40 C.J., pages 813 and 814, the rule is enunciated: "Under the provisions of an act of Congress, the ground included within the boundaries of a valid location of a mining claim is, by virtue of such location, withdrawn or segregated from the public domain, and the exclusive right of possession and enjoyment thereof becomes vested in the locator, and so remains as long as he complies with the acts of congress and the local statutes and regulations, such as by performance of the required annual assessment work. Such a location has the effect of a grant from the federal government of the right of present and exclusive possession of the land located, and includes every appurtenant belonging to the realty. * * * The locator's rights under a valid location exist, although the locator does not apply for or obtain a patent, * * *."

■ "The locator of a mineral claim has, prior to the issuance of the final receiver's receipt, a broader control over his claim, and a higher estate therein than an entryman of agricultural land." Tyee Consolidated Min. Co. v. Langstedt, C.C.A. from Alaska, 136 F. 124, 128, 2 Alaska Fed. 358.

In B. B. Titcomb v. J. T. Kirk, 51 Cal. 288, it was held that the act of congress, section 2339, R.S.U.S., granting, "the right of way for the construction of ditches and canals for the purposes herein specified * * *," did not give a ditch owner a right of way over a prior mineral location without condemnation proceedings.

■ (c) The act of congress, Section 2477, R.S.U.S., is a mere offer which does not become operative until accepted by the public, or the proper authorities of the particular state in which the lands are located. Moulton et al. v. Irish, 67 Mont. 504, 218 P. 1053.

In Walbridge v. Board of Com'rs of Russell County, 74 Kan. 341, 86 P. 473, Walbridge, the owner of an odd numbered section of land, by conveyance from the Union Pacific Railway Company, denied the legal existence of a public road over his land.

It was held that the legislature of Kansas, in 1873, accepted the right of way offered in section 2477, R.S.U.S. by providing that all section lines should constitute highways.

It was further held that, as the act of congress of 1862 granted odd sections to the Railroad, upon its surveying and filing a map of definite location, the Railroad, upon complying with those conditions in 1867 got a right to the land, which dated back to 1862, though it did not get patent for the land until 1890. Consequently, the odd sections were not public land when section 2477, R.S.U.S., was passed in 1866, and the right of way offered did not apply to those lands, and the United States had no power to take away any portion of them from the Railroad for rights of way.

In Korf et al. v. Itten, 64 Colo. 3, 169 P. 148, plaintiff made a homestead entry on public lands of the United States prior to the passage of the law of Colorado establishing highways along section lines.

Pursuant to said laws of Colorado, the Board of County Commissioners attempted to establish a road over plaintiff's homestead, along the section line.

It was held that plaintiff had the superior right, and his homestead was not public land and was not subject to a right of way, under section 2477, R.S.U.S., and the Colorado laws, though he did not have any patent for the homestead.

In Bardon v. Northern Pacific Railroad Company, 145 U.S. 535, 12 S.Ct. 856, 36 L.Ed. 806, the act of Congress of 1864, having granted the Railroad alternate sections when the definite route was ascertained and a map therefor approved by the Secretary of the Interior, the court held that land which had been filed on for homestead purposes at the time of the passage of the act was not public land and was excluded from the grant to the Railroad, even though at the time the definite route was determined and the map approved the homestead had been abandoned and the land was then public land.

In Atchison, T. & S. F. Ry. Co. v. Richter, 20 N.M. 278, 148 P. 478, L.R.A.1916F, 969, an entryman filed a declaration on coal lands and went into possession, but, before he had made final payment for the land the Railroad had entered the same and completed its railroad upon it. The Railroad attempted to justify its position under section 2477, R.S.U.S., and asserted that the entryman was not the owner of the land but that it was, in reality, public land under the authority of Flint, etc., Railroad Company v. Gordon, 41 Mich. 420, 2 N.W. 648.

The court held the last mentioned case to be contrary to the great weight of authority and sustained the coal land entryman, stating [20 N.M. 278, 148 P. 481, L.R.A. 1916F, 969]: "It is not reasonable to suppose that Con-

gress intended by section 2477, R.S.U.S., to grant to railroads a right to enter upon the possession of entrymen of coal lands, who by its laws had been invited to enter upon and take possession of the same, and who, by certain steps provided by law, were to have the right to purchase them. Such lands do not fall within the terms of the grant under the section. * * * We conclude that under section 2477, R.S.U.S., no right can be secured which is superior to the right of an intervening coal entryman who has filed his declaratory statement prior to the acceptance of the grant by a railroad company."

In McAllister v. Okanogan County, 51 Wash. 647, 100 P. 146, 24 L.R.A., N.S., 764, in syllabus No. 2, it is stated: "Rev.St.U.S. § 2477 (U.S.Comp.St.1901, p. 1567) [43 U.S.C.A. § 932], grants a right of way over unreserved public lands for highways, and Wash.Laws 1903, p. 155, c. 103, authorizes the county commissioners to accept the grant. Held, that the grant remains in abeyance until a highway is established under some public law authorizing it and takes effect from that time, and, as to one who has entered unsurveyed lands as a bona fide settler, a highway can only be established in the manner prescribed by an act of 1895, and amendatory acts or by user ripened into a prescriptive right."

■■ (d) It being the well established purpose of Congress to encourage the development of the mineral lands of the United States by the location of mining claims thereon, and Congress having specifically granted "the exclusive right of possession and enjoyment" of mining claims to the locators, and Congress having created the Alaska Road Commission for the benefit of Alaska and having given it power to construct only such roads as should be of "substantial value or importance for *mining, trade, agricultural, or manufacturing purposes,"* it appears very definitely from the congressional acts, as well as from the decisions of the courts above mentioned, that

the Alaska Road Commission had no right, in 1917, to go
upon the Spot Association and build a road and bridge
thereon.

## III.

(a) The stipulated facts show an adverse user of the
above-mentioned road and bridge over the Spot Associa-
tion by the general public, from 1917 to 1938.

■ This would constitute an adverse user of twenty
full years.

■ The public may, by user, accept the dedication
contained in section 2477, R.S.U.S.; Bishop v. Hawley,
33 Wyo. 271, 238 P. 284; Marchand v. Town of Maple
Grove, 48 Minn. 271, 51 N.W. 606; Montgomery v. Som-
ers, 50 Or. 259, 90 P. 674.

In City of Butte v. Mikosowitz, 39 Mont. 350, 102 P.
593, it was held that the use of public land as a right of
way for such period as would have given a prescriptive
right had the land been private is sufficient acceptance of
the right of way offered and granted by congress in sec-
tion 2477, R.S.U.S.

In 29 C.J., page 384: "Many courts have recognized
the twenty years' period as one sufficient for and neces-
sary to the creation of a highway by adverse user. By
the great weight of modern authority, however, in the ab-
sence of any statute specially applicable to highways, the
duration of the user is governed by analogy by the local
statute fixing the time for bringing an action for land,
whether that time is fixed at twenty years or a greater or
lesser period." Bayard et al. v. Standard Oil Co., 38 Or.
438, 63 P. 614.

In Parrott v. Stewart et al., 65 Or. 254, 132 P. 523,
525:

"To establish a highway by prescription there must be
an actual adverse public use, general, uninterrupted, con-
tinued for the period of the statute of limitations under a
claim of right. Where this is established for the statutory

period, the right is deemed perfected and a permanent one. * * * It was held in Smith v. Gardner, 12 Or. [221] 226, 6 P. 771, 53 Am.Rep. 342, that mere user of a highway, however long continued and uninterrupted by the public, is not sufficient to give a right in the public; but such user must be accompanied by acts, such as working the road, keeping it up by the public, repairing it or removing obstructions, etc., showing the use to have been made under a claim of right, and not merely by permission of the landowner. A permissive use of a way by certain portions of the community constitutes a license and not a dedication, and is ordinarily something that may be revoked. * * *

"The adverse use which will give title by prescription to an easement is substantially the same in quality and characteristics as the adverse possession which will give title to real estate. As in the case of adverse possession, it must be continued for a long period; it must be adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owner of the estate out of which the easement is claimed."

As the original road and bridge involved in this action were used for twenty full years by the public, under conditions creating a prescriptive right, that right was vested and determined before October, 1937, so it becomes immaterial to decide whether the length of time required in Alaska for a prescriptive right of way is twenty years or ten years, the latter time being the limitation by the laws of Alaska (Sec. 3354, C.L.A.1933) for bringing an action relating to the possession of real property.

(b) The Territorial laws applicable to this case are as hereinafter set forth.

Chapter 27, Session Laws of Alaska 1915, being "An Act Creating four road districts * * * and creating the office of Road Commissioner for each road district * * * for the purpose of building, repairing and maintaining of trails, roads and bridges * * *," made each judicial div-

ision a road district and provided that Road Commissioners should be elected at the general elections, to have charge of public road work.

There is nothing in this act as to the width of public roads.

Chapter 36, Session Laws of Alaska 1917, created a Territorial Board of Road Commissioners for the construction and maintenance of roads, trails, bridges and ferries in the Territory of Alaska, the Board to consist of the Governor, the Surveyor-General, and the Territorial Treasurer. Its duty was to estimate the amount of money required to construct and maintain roads and bridges in each Territorial road division and to apportion and transfer to the treasurers of the various divisional road commissions such moneys as should be appropriated by the Legislature.

Territorial road divisions, corresponding to the judicial divisions, were created and Divisional Road Commissions were provided for, consisting of the elective Road Commissioner and two members to be appointed by the Governor. The elective Road Commissioner was to have charge of the location, construction, etc., of public roads and bridges.

Section 13 thereof provides: "The Divisional Commission shall classify all public Territorial roads and trails in the divisions as wagon roads, sled roads, or trails * * *. The lawful width of right-of-way of all roads or trials shall be sixty feet. The width of traveled ways, the grade and character of improvement of each road or trail shall be determined by the Divisional Board of Road Commissioners in view of the requirements of the traffic on each road."

By an act, effective April 21, 1919, Chapter 11, Session Laws of Alaska 1919, the Legislature substantially reenacted the above-mentioned provisions, contained in the 1917 act, and making the further provisions:

1. That the Territorial Board of Road Commissioners should have authority to enter into co-operative agreements with the Board of Road Commissioners of Alaska for the construction and maintenance of roads;

2. That the Divisional Boards of Road Commissioners should have their appointive members appointed by the Territorial Board of Road Commissioners instead of by the Governor;

3. That the elective Divisional Road Commissioner should continue as before, until March 1, 1921, when the Divisional Road Commission should consist of two elective members and one to be appointed by the Territorial Board of Road Commissioners, who should be a trained civil engineer and who should have charge of the location and maintenance of public roads.

By an act approved May 3, 1923, Chapter 92, S.L.A. 1923, the Territorial Board of Road Commissioners was given power to appoint an engineer as the fourth member thereof. It was the duty of the engineer to lay out and survey roads and to make the maps and plans for road work, and all such work was required to be according to such specifications and plans. He was required to superintend the construction, alteration and maintenance of all public roads, bridges, etc.

Amendments not changing the above provisions in any material sense were made in 1927 and 1931.

By an act approved April 6, 1923, Chapter 19, S.L.A. 1923, a tract four rods wide, between each section of land in Alaska, was dedicated as a public highway, the section line to be the center of the highway.

(c) The agreed statement of facts shows the old road and bridge to have been constructed and maintained solely by the Alaska Road Commission and that the contemplated work will be solely by the Alaska Road Commission. The Territorial Board of Road Commissioners never had any part in the construction or maintenance of the same, either by itself or in conjunction with the Alaska

Road Commission. There was never any classification or jurisdiction of this road by the Territorial Board of Road Commissioners.

 The sixty-foot width of roads is limited by the Territorial laws to Territorial roads built and/or maintained by the Territorial Board of Road Commissioners, either by itself or in cooperation with the Board of Road Commissioners for Alaska. It has no application to the roads and bridges involved in this suit.

 The statement of facts does not show whether the Spot Association is on surveyed or unsurveyed lands, so the dedication contained in Chapter 19, S.L.A.1923, establishing public highways along section lines could have no bearing in this case.

## IV.

(a) As there were no Territorial laws fixing the width of the right of way of the road in question in this suit, the width of such right of way must be determined otherwise.

 The general rule is as follows: "Where the right to a highway depends solely upon user by the public, its width and the extent of the servitude imposed on the land are measured and determined by the character and extent of the user, for the easement cannot upon principle or authority be broader than the user. This does not mean, however, that the public will be confined to the precise portion of the soil on which the wheels of passing vehicles may run—commonly called the 'track.'" 18 C. J. 113; to the same effect is section 23, page 388, of 29 C.J.

In Marchand v. Town of Maple Grove, 48 Minn. 271, 51 N.W. 606, 607, it was held: "if the plaintiff allowed the public to travel over his land south of the laid-out road, and, at places, to improve the way, where it was evident that further improvements would have to be made for the safety and convenience of travelers, then the pub-

lic would be entitled to more than the mere width of the track; it would be entitled to such adjacent ground as would be necessary in case of an excavation, or to fill in upon in case of an embankment."

In Montgomery v. Somers, 50 Or. 259, 90 P. 674, it was held that a prescriptive road is limited to the width used, but it is a question for the jury to determine just what width was used, and the width was not confined to the actual tracks.

In Bayard et al. v. Standard Oil Co., 38 Or. 438, 63 P. 614, 615, Wolverton, J., states: "User by the general public, under a claim of right, adversely, and not by mere possession of the owner for the period prescribed by the statute as a limitation beyond which actions for the recovery of real property cannot be maintained, will establish an easement in favor of the public. But the use must be continuous and uninterrupted, and substantially by way of a certain and well-defined line of travel, for the entire period." Prescription presupposes an establishment by competent authority. Dedication implies a grant. An easement may be acquired by adverse user, by whatsoever name the process of establishment is called. "As a general rule, when the highway depends solely for its establishment upon adverse and continuous user by the general public, its width and extent of servitude are measured and determined by the character and extent of the user, for the easement cannot, upon principle or authority, be broader than the user. * * * Other conditions, however, may be effective to extend the exterior limits beyond the thread or course of actual travel, as where inclosures may have been permanently maintained by persons affected with reference to the highway, or the use is referable to a survey and plat recognized and adopted by owners of lands over which the way extends, or was under color of ineffectual proceedings to establish a legal road under the statute. * * * Even where the highway is founded solely upon user, its width or extent of servitude is usually a

question of fact for the jury. * * * it ought not * * * to be confined exclusively to the beaten track or thread of actual travel, because of the exigency that experience has shown for the passing and repassing of those in the use of it. And circumstances such as that the use has been .with reference to natural objects or artificial obstructions, or the character of the way requires improvement, necessitating access to the wayside, are pertinent for the consideration of the jury in determining the question. * * * Ordinarily, there must be an entry under, and a claim of right with reference to, the colorable title, in order to set the statute of limitations running. In such a case, actual possession need not be of the whole, but may be of a part only, and it will be extended constructively to the whole, by reason of the definite description contained in the defective or ineffectual muniment. * * * Where the highway as used runs without the exterior lines of that as surveyed and attempted to be located and established by lawful authority, the width must then be determined by the rules hereinbefore ascertained, and the ineffectual proceedings can have no bearing whatever upon the subject."

(b) The agreed statement of facts states: "That at the outset said road * * * was comparatively narrow, but has been gradually improved and widened during the ensuing years so that said road is now maintained at a width of between fifteen (15) and eighteen (18) feet * * *." Nothing is stated as to any greater width being necessary or convenient for the use of the road by the public, or for the maintenance or repair of the road, or by reason of any physical characteristic of the land over which the road goes.

## V.

■■■■ The result of the foregoing is that the width of the road over the Spot Association, for which a right of way has been obtained by prescription, is limited to eighteen feet, i. e., nine feet on each side of the center line thereof. The Alaska Road Commission has no right

to build any new road outside of the eighteen feet above-mentioned, and it has no right to build any bridge, other than to repair or replace the original bridge and perhaps widen it to be nine feet on each side of the center line thereof.

As the new bridge in question extends fifteen feet from the upstream side of the original bridge, which original bridge is fourteen feet wide, it is at least thirteen feet outside the prescriptive right of way.

The completion and use of the new bridge and of approaches therefrom to the old road would be an unlawful appropriation of plaintiff's mining claim, and he is entitled to the remedy prayed for in his complaint.

Let findings of fact and judgment be drawn accordingly.