DAVID MARCHAND *vs.* TOWN OF MAPLE GROVE.

Argued Jan. 18, 1892.    Decided Feb. 1, 1892.

| 48 | 271 |
| f83 | 46 |
| 83 | 408 |

**Statute Construed.**—The width of a public highway acquired by adverse user is not fixed by that part of 1878 G. S. ch. 13, § 47, which prescribes that certain ways, therein mentioned, shall be four rods wide.

**Width of Highway Acquired by Common-Law Dedication.**—Where a public highway is obtained solely by adverse user for the period of time mentioned in said section forty-seven, (47,) its width is to be measured and determined, as a question of fact, by the character and extent of the user. It is not necessarily confined to the track made by passing vehicles, but may include such adjacent land as may be needed for ordinary repairs and improvements.

Appeal by defendant, the township of Maple Grove, from a judgment of the district court of Hennepin county, *Canty*, J., entered August 28, 1891, in favor of plaintiff, David Marchand, for $127.08 damages and costs.

Plaintiff owned the northwest quarter of the northeast quarter, and the northeast quarter of the northwest quarter, of section fourteen, (14,) in township one hundred and nineteen (119) north, of range twenty-two (22) west. In the year 1858 the supervisors of the township laid out and established a highway upon his north line four rods wide, one half of it being on plaintiff's land. There was a marsh on the line, and, instead of bridging it in the highway, they built the bridge about sixty-three feet south of the section line. To connect the highway with this bridge, the township officers filled in and made approaches to it at both ends, and the road was for twenty-five years worked and traveled, for one hundred and twenty rods on the east, and thirty rods on the west, of the bridge, on a line lying from two to four rods south of the section line. In 1887 plaintiff built a wire fence along the south side of, and two rods distant from, the thread of the road as traveled and worked. In June, 1890, the township officers, to improve the road through the low land at each end of the bridge, dug up earth east of the marsh, south of and within

two rods of the thread of the highway as traveled, and used it in raising and widening the approaches to the bridge. The plaintiff claimed that the township had not acquired the right to do this for such width, and brought this suit to recover damages for trespass.

The defendant claimed that the right acquired by more than twenty years of adverse use extended for two rods on either side of the line as traveled. The issues were tried May 14, 1891. The jury rendered a verdict for plaintiff, and assessed his damages at $79.50. Defendant moved for a new trial, but it was denied, and judgment was entered on the verdict.

*Young, Nye & Taylor,* for appellant, contended that by 1878 G. S. ch. 13, § 47, all roads, whether laid out by the supervisors or acquired by dedication of the owner and acceptance by the public, must be at least four rods wide; that a highway established by user is to be considered as of the full width of ordinary highways. But, if this is not so, yet the highway thus acquired must at least be wide enough to accommodate public travel, and to admit the making of ordinary repairs and improvements. *Miller* v. *Town of Corinna,* 42 Minn. 391; *Sprague* v. *Waite,* 17 Pick. 309, 317; *Pillsbury* v. *Brown,* 82 Me. 450.

They also contended that the building of the wire fence in 1887, along the south side of the road for eighty rods, was an admission, and cogent evidence, that the dedication extended in width to it, and that, as defendant did not trespass or take earth south of or beyond the fence, the judge should have instructed the jury to return a verdict for defendant as requested.

*Babcock & Garrigues,* for respondent, contended that the landowner could dedicate to the public as much or as little of his land as he pleased. If the public accepted the gift, they took it to the extent of the offer, and could not claim more. That it was for the jury to say from the evidence how much of his land plaintiff had given to widen on the south side the highway as laid out in 1858. The jury having found on this question for plaintiff, it will not be disturbed on this appeal. The building of the fence, although good evidence, was not conclusive, as to the extent of the gift. *Bolger* v. *Foss,* 65 Cal. 250;

*Davis* v. *Clinton*, 58 Iowa, 399; *Bartlett* v. *Beardmore*, 77 Wis. 356; *Hart* v. *Trustees of Bloomfield Tp.*, 15 Ind. 226; *Ehret* v. *Kansas City, etc., Ry. Co.*, 20 Mo. App. 251; *Daniels* v. *People*, 21 Ill. 439.

COLLINS, J.   Action to recover damages for an alleged trespass on land belonging to plaintiff.   Defendant town claimed, in justification, that at the place where its officers had excavated, and also raised an embankment, there had existed a public highway for more than twenty (20) years, and that the acts of its officers were performed within the limits of this highway, that it might be improved for public use.   The facts were that in 1858 the proper authorities laid out and established, east and west, upon the section line which constitutes plaintiff's north boundary line, a public highway four (4) rods wide.   Of course one half of this, a strip thirty-three (33) feet in width, was upon plaintiff's land.   That highway, as established, is still a public road, as was conceded upon the trial.   At a certain point upon it there was a marsh, and, instead of bridging it within the road limits, the authorities placed their bridge about thirty (30) feet south of the southerly line of the highway, and consequently wholly outside of the same.   To meet and connect with this bridge, the road was thereafter worked and traveled wholly outside and southerly of the limits of the laid-out way, at varying distances, for some one hundred and twenty (120) rods easterly and thirty (30) rods westerly from the marsh.   At the point of the greatest departure from the section line,—about where defendant raised the embankment,—the northerly line of the traveled track was twenty-five (25) feet distant from the south line of the road, as laid out in 1858.   The traveled track, as near as we can estimate from the map made a part of the record, was about twelve (12) feet in width.   Such has been the general course and situation of the road at this point for more than twenty (20) years.   In the year 1890 defendant, by its officers and for the purposes already mentioned, excavated east of the marsh, and with the materials so obtained made the embankment.   In so doing they both excavated and filled south of the traveled track from ten (10) to twenty (20) feet.   Upon the trial it was admitted that a public highway had been acquired by user or prescription 'from the

v.48M.—18

point upon the east of the marsh where it departed from the southerly line of the laid-out way to the place where it entered the same line on the west.

The chief contention of counsel was and is as to the width of the acquired road; and, against the objections of the defendant town, this question was submitted to the jury. It is now argued that the court below erred in regarding this question as one of fact to be determined by the jury, for two reasons: *First*, that the width of public roads, whether laid out by the authorities or acquired as this was, is definitely fixed at four rods,—citing 1878 G. S. ch. 13, § 47; *second*, that, if this be not the law, the town officers were justified in going outside of the traveled track when repairs became necessary, and, to accomplish this, had authority to cut and fill as the circumstances of the case might require, keeping within the limits, in width, of the ordinary highway.

Taking up the principal one of these propositions, attention is directed to the statute—section forty-seven, (47,) *supra*—under which it is claimed that the width of a road acquired by user is fixed at four rods. The first paragraph of this section, that which specially relates to the width of roads laid out by supervisors or county commissioners, was enacted in its present form in 1873, with a proviso authorizing the establishment of cartways two rods wide. In 1877 the legislature remodeled and amended this section, interpolating and incorporating into it the clause in respect to roads which had been used and kept in repair and worked for six years continuously. The manner of laying out cartways was also changed, somewhat. It is true that the section was made to read as an entirety, but this does not indicate that a portion of a distinct and complete sentence, prescribing that ways secured through an exercise of the right of eminent domain shall be four rods wide, should be carried forward and made to render similar and important service in another, distinct, and complete sentence, relating to the acquiring of public ways by user,—a statute of limitations, in effect, predicated, and only justifiable, upon a claim of actual adverse possession, occupation, and improvement for the period of six continuous years. Nor does the

fact that these independent sentences or clauses of the section happen
to be connected by a conjunction, which is meaningless and superflu-
ous, tend to sustain appellant's claim that highways secured by user
or prescription must, of necessity, be of the same width as such as
are mentioned in the preceding sentence or clause.   The language of
the first is unambiguous and entire, referring directly to the subject
in hand, namely, the width of roads laid out by the public authorities.
So are the words of the second sentence.   They go directly to an-
other matter,—that of acquiring a public way by adverse user,—and
are equally as unambiguous and complete.   Had it been the inten-
tion of the legislature, when cutting down the common-law period of
twenty (20) years of adverse user to six, (6,) to make further inno-
vation, and otherwise radically change the common-law rule as to the
width of ways so acquired, and to make them four rods wide in
all cases, there would have been no uncertainty of expression in the
statute.   We regard these two sentences of section forty-seven (47)
as wholly disconnected, and have no hesitation in holding that the
boundary lines of a road secured by user or prescription have not
been regulated by statute, but remain as at common law.   As the
right to the highway in this case depends solely upon an adverse user
by the public, its width, and the extent of the servitude imposed upon
the plaintiff's land, are measured and determined by the character
and extent of the user, for the easement cannot, upon principle or
authority, be broader than the user.   This is the *gist* of the decisions
upon the subject, where the right to the road is not made referable
to or founded upon a claim or color of right furnished by some pro-
ceedings instituted for the purpose of laying out and establishing the
same.   Elliott, Roads & S. 136, and cases; Ang. Highways, 144;
*Scheimer* v. *Price,* 65 Mich. 638, (32 N. W. Rep. 873;) *Wayne Coun-*
*ty Savings Bank* v. *Stockwell,* 84 Mich. 586, (48 N. W. Rep. 174;)
*Bartlett* v. *Beardmore,* 77 Wis. 356, (46 N. W. Rep. 494;) *Ehret* v.
*Kansas City, etc., Ry. Co.,* 20 Mo. App. 251.   The character and
extent of the right might be measured and determined somewhat dif-
ferently under other circumstances, in accordance with the principle
stated in Elliott, *supra.*   See, also; *Sprague* v. *Waite,* 17 Pick. 309,
and *Pillsbury* v. *Brown,* 82 Me. 450, (19 Atl. Rep. 858.)   In conclu-

sion, on this point, we call attention to *Prescott v. Beyer*, 34 Minn. 493, (26 N. W. Rep. 732,) in which it seems to have been taken for granted by all parties that, although proceedings to lay out a state road four rods wide had been taken, but abandoned because of a failure to complete the record, the public acquired the right to only a part,—that portion which had been actually improved and traveled over.

Of course the rights of the public cannot be confined to the precise portion of the soil on which the wheels of the passing vehicles may run, commonly called the "track," nor was that the view of the court below. The jury was charged that, if the plaintiff allowed the public to travel over his land south of the laid-out road, and, at places, to improve the way, where it was evident that further improvements would have to be made for the safety and convenience of travelers, then the public would be entitled to more than the mere width of the track; it would be entitled to such adjacent ground as would be necessary in case of an excavation, or to fill in upon in case of an embankment. As we regard the law pertaining to the width of ways secured by user, the appellant has no cause for complaint as to this branch of the charge. The whole case was tried by the plaintiff upon the theory that the defendant town had trespassed upon his premises by making a much wider cut than was necessary in order to properly improve the way at that point, and hence went outside of the road, as it actually existed, for the sole purpose of obtaining materials with which to make an unnecessarily broad embankment in the marsh. His contention was that, as the width of the way was measured and determined by the extent and character of the user, if more dirt was needed for the fill than could have been obtained by a proper and needed improvement at the place where an excavation was to be made, the defendant should have obtained it elsewhere; and, further, that the fill itself could not be made any wider than was absolutely necessary in order to render the way passable. The position of the defendant was that, as to both cut and fill, the road was four rods wide under the statute, or necessarily became so. As the court held, properly, that its width was to be measured and determined by the

character and extent of the user, the question became one for the jury, and there was testimony which would have sustained a verdict either way. We do not agree with the counsel for appellant, that the evidence was conclusive that both cut and fill were no wider than was necessary for the proper improvement of the road.

It was undisputed that, some two years before the alleged trespass, plaintiff built a wire fence alongside the road, as traveled, a few feet south of the line on which the excavation and embankment were subsequently made. This circumstance was submitted to the consideration of the jury as bearing upon the case; but it cannot be given the conclusive effect which appellant now claims for it, for at least two reasons: *First,* because it could not possibly have such an effect; and, *secondly,* because the appellant made no such claim for it in the court below. He allowed the court to submit it simply as a circumstance for the consideration of the jury, without suggesting that it might be of greater materiality, for illustration, as evidence of dedication by plaintiff.

Because of appellant's argument that its views should be adopted in order to secure uniformity in the width of highways, it may not be amiss to notice that, if its position was sustained, there would be a public road on plaintiff's north line from sixty-six (66) to one hundred and twenty-four (124) feet wide. With the present result of this litigation the way is practically ninety-seven (97) feet in width at one point. These facts, probably, had their influence with the jury. There is absolutely nothing in the other points made by counsel.

Judgment affirmed.

(Opinion published 51 N. W. Rep. 606.)