# MINNEAPOLIS BREWING COMPANY v. CITY OF EAST GRAND FORKS.[1]

July 12, 1912.

Nos. 17,593—(148).

**Highway — vacation — statutory adverse user.**

Action to determine adverse claims to land.    The defendant city claimed a public easement in the premises by virtue of the original plat dedication thereof as public streets, which had been kept in repair and worked for at least six years.    The plaintiff claimed that the streets had been duly vacated, and denied that they had been worked as claimed.    The trial court found that the streets had been vacated, and that no part of the premises had been used, kept in repair, and worked as a public way for six years.    *Held:*

1. In order to establish a public highway by statutory adverse user under section 1197, R. L. 1905, mere use of the premises for public travel for six years is not alone sufficient.    It must also be shown that some work had been done or repairs made on some part of the alleged highway at least six years before the contest as to its validity arose.

2. The question whether a petition for the vacation of a street is signed by the requisite number of petitioners, as provided by section 150, c. 8, Laws 1895, is one of fact to be determined by the city council, and its deci-

[1] Reported in 136 N. W. 1103.

sion thereon, in the absence of fraud, cannot be reviewed and set aside, except in a direct proceeding.

3. The trial court did not err in sustaining an objection to the offer of the city to show that the petition for the vacation of the streets was not signed by the requisite number of petitioners, or in sustaining an objection to its offer to show that the value of the premises vacated, as determined by the city council, paid by the abutting owners to the city, and retained, by it, was less than one-tenth part of their value.

4. The trial court committed no reversible errors in its rulings as to the admission of evidence. Its findings of fact are justified by the evidence.

Action in the district court for Polk county to determine adverse claims to certain real estate. The case was tried before Watts, J., who made findings and as conclusion of law found that plaintiff was the owner in fee simple of the land described in the complaint. From an order denying defendant city's motion for a new trial, it appealed. Affirmed.

*G. A. E. Finlayson,* for appellant.

*Cobb & Wheelwright, F. C. Massee, A. A. Miller, C. H. Childs* and *George P. Flannery,* for respondent.

START, C. J.

Action to determine adverse claims to a tract of land which was formerly a part of two public streets, known respectively as Water street and Julia avenue, in the city of East Grand Forks, Minnesota.

The complaint alleged that the plaintiff was the owner in fee of the land and in possession thereof, and that each of the defendants claimed some title or interest therein adverse to the plaintiff. The city by its answer asserted a public easement in the land by virtue of the original plat and dedication of the land as public streets, which had been kept in repair and worked for at least six years continuously prior to the commencement of the action. The reply alleged that the streets had been duly vacated, and denied the allegations of the answer as to work thereon and repair thereof. The cause was tried by the court without a jury. Findings of fact were made to the effect that the allegations of the complaint are true, and, further, that no part of the land in controversy had been

used, kept in repair, and worked continuously as a public way for six years before the commencement of the action. As a conclusion of law judgment was ordered for the plaintiff, and the city appealed from an order denying its motion for a new trial.

The appellant's assignments of error raise two general questions for our decision.

1. The first one involves the construction, as applied to the facts of this case, of section 1197, R. L. 1905, which reads as follows: "Whenever any road or portion thereof shall have been used and kept in repair and worked for at least six years continuously as a public highway, the same shall be deemed dedicated to the public, and be and remain, until lawfully vacated, a public road, whether the same has ever been established as a public highway or not."

It is essential for a clear understanding of the question to state the facts relevant thereto as disclosed by the record. It is undisputed that the land, which is the subject-matter of this action, was, prior to June 5, 1902, a part of the public streets of the city by virtue of the plat dedication and acceptance thereof. If the portion of the streets over the land in question has never been vacated, the city has a public easement thereon by virtue of such original dedication. On the other hand, the plaintiff's title rests upon the alleged vacation of such portions of the streets by the resolution of the city council duly passed, with compensation made by the abutting landowners, and the recording thereof in the office of the register of deeds of the proper county on June 5, 1902. This action was commenced September 5, 1908. The city claimed that the vacation proceedings were void; hence it still held the public easement for street and highway purposes which it acquired by the original plat dedication. The city also claimed that, even if the vacation proceedings were valid, yet there was a public street or highway over the land by virtue of a statutory adverse user; that is, that the alleged street, or some portion thereof, had been used, kept in repair, and worked for at least six years continuously as a public highway.

It is obvious that, in order to establish the existence of the street or highway by statutory adverse user, it must have had its inception after June 5, 1902, the date of the alleged vacation, and at least

six years next before September 5, 1908, the date of the commencement of the action, that is, on or before September 5, 1902; for, if the vacation proceedings were valid, they extinguished the prior public easement, however it may have been acquired. On the trial the city sought to establish such adverse statutory user of the premises by showing that they had been continuously used for the statutory period, and that work had been done and repairs made thereon when necessary. The trial court ruled in effect that mere use, without work or repairs on some portion of the premises, was not sufficient to set in motion the statute, but that work must have been done on some portion thereof, and that in the instant case it was necessary to show work or repair thereon on or before September 5, 1902. This ruling was excepted to, and is here urged as error.

This presents the question whether mere use of land for public travel is sufficient, in and of itself, to set the statute running. The original of the statute is chapter 50, p. 82, Laws 1877, and it has been frequently construed by this court.

In Miller v. Town of Corinna, 42 Minn. 391, 44 N. W. 127, the premises were worked—that is, cleared and turnpiked and used for a highway—for ten years before the commencement of the action. The act was held constitutional on the sole ground that the actual entry and use by the public is notice to the landowner that his land has been appropriated for a public use, and he is allowed six years in which to contest the claim, or apply for damages, and that the statute was similar to the statute of limitations applied to real estate.

In Marchand v. Town of Maple Grove, 48 Minn. 271, 274, 51 N. W. 606, the statute was held one of limitations, predicated and only justifiable upon a claim of actual adverse possession, occupation, and improvement *for the period of six continuous years.*

In Klenk v. Town of Walnut Lake, 51 Minn. 381, 384, 53 N. W. 703, the distinction was clearly made between the acquisition of a public highway by a common-law dedication, which rests upon the intention of the landowner and acceptance by the public, and by adverse use under the statute, which was held in effect a short statute of limitations prescribing a time after which, *under the conditions*

*specified in it,* to wit, keeping in repair and working, the owner would not be heard to question the existence of the highway.

In Rogers v. Town of Aitkin, 77 Minn. 539, 80 N. W. 702, the town supervisors attempted to lay out a highway, but failed, owing to defects in their proceedings. The evidence showed that, following such attempt, the road was surveyed and opened; that is, work was done upon it, that it was continuously used and traveled as a public highway for six years, and that public work was expended thereon whenever it was necessary. It was held that the evidence, if satisfactory to the jury and trial judge, was sufficient to establish a highway by statutory user.

The case of Hansen v. Town of Verdi, 83 Minn. 44, 85 N. W. 906, is to the same effect. There was evidence in that case to show that such work as was necessary had been done on the road from time to time *during six years immediately preceding* the alleged trespass on the highway. This was held sufficient evidence, although meager, to support the finding of the trial court of the existence of the highway.

The case of Meyer v. Town of Petersburg, 99 Minn. 450, 109 N. W. 840, reviews the previous cases, and holds that the right to claim a road by statutory adverse user does not rest upon any intention of the landowner, but upon the possession, use, repair, and working of the premises as a public highway continuously for six years; that is, the public, by virtue of the short statute of limitations applicable to the adverse possession of land for highway purposes, acquires, if the conditions of the statute have been complied with, a legal highway.

It is obvious, from a reading of the statute and a consideration of the decisions of this court construing it, that mere use of premises for public travel is not sufficient to put the statute in motion. Such use is only one of the essential conditions of adverse possession by the public. The other is that some portion at least of the alleged highway must have been worked or repaired at least six years before a highway by statutory adverse user can be successfully asserted. The wisdom and necessity of requiring something more than mere travel by the public over the land of a private owner in

order to divest him of his property for public use are apparent; for
at the time the original statute was enacted it was the custom, and
had been from the first settlement of the state, for public travel to
pass over vacant land along the shortest line, without reference to the
location or existence of highways. If the legislature had declared
that such use alone for travel should, if continued for six years, be
sufficient to establish a highway, the result would have been public
highways running diagonally across most of the vacant quarter
sections and city blocks. Again, mere use for travel, in view of the
custom of the country, would not have been sufficient to advise the
landowner that the public authorities had appropriated his land
for a public highway; but, when the public appropriates land for a
highway by opening and working it, the owner has constructive no-
tice, and must act, or his right to contest such taking will be barred
by the statute in six years. The legislature, therefore, prescribed
the further condition that the alleged highway must have been kept
in repair and worked for six years in order to constitute it a public
highway by statutory adverse user. It is just as essential to show that
work on a highway, or some part thereof, had been done six or
more years before the contest arose, in order to bring a case within.
the statute, as it is to show that the alleged highway had been used
for public travel six or more years.

The statute is a remedial and beneficial one, and should be and
has been liberally construed by this court, especially as to the
amount of work and repairs necessary to be shown in order to es-
tablish a highway by statutory adverse user. While it has been
held in general terms that it was sufficient if work was done on such
parts of the road as was reasonably necessary to accommodate the
travel over it, yet it has never been decided that it was not necessary
to show some work on some part of the alleged highway six years be-
fore the contest arose.

We accordingly hold that, in order to establish a public highway
by statutory adverse use, under section 1197, R. L. 1905, mere use
of the premises for public travel for six years is not alone sufficient;
but it must also be shown that some work had been done or repairs
made on some part of the alleged highway at least six years before

the contest as to its validity arose. It follows that the ruling of the trial court in this connection was correct, and that it did not err in finding that no part of the alleged highway had been used, kept in repair and worked for six years.

2. The other assignments of error present the general question whether the trial court erred in its rulings and findings as to the alleged vacation of the original streets by the city council. The defendant city is organized under chapter 8, p. 16, Laws 1895, and the vacation proceedings were had under section 150 thereof. It appears from the record that the original papers in such proceedings could not be produced, a fire in the city hall having destroyed many of the public records, and secondary evidence was received of their contents. There was evidence tending to show that a petition for the vacation of the streets was presented to the city council; that the petition was ordered filed and heard and considered at a specified time and place; that notice of such hearing was duly given; that the matter was duly heard, and a resolution passed vacating the streets; that the value of the premises vacated was determined, and the amount thereof paid into the treasury of the city; and that a certified copy of the resolution was recorded in the office of the register of deeds. The city offered to show, by the records in the office of the register of deeds and by witnesses in court, that the petition for the vacation of the streets was not signed by the requisite number of owners of property along the line thereof. The trial court sustained the plaintiff's objection to the offer, and the ruling is here urged as error.

The petition stated that the petitioners were the abutting lot and land owners. The charter provisions of the city as to vacation of streets (Laws 1895, p. 70, c. 8, § 150) give to the city council exclusive jurisdiction to vacate streets, and provide that no such vacation shall be ordered, except upon petition of a majority of the owners of property on the line of the streets to be vacated; that the petition shall state the facts and reasons for vacation; that upon receiving such petition the city council shall, if it deem it expedient that the matter be proceeded with, order the petition to be filed of record and notice of the time and place of hearing thereon to be given;

and, further, that at the time and place appointed for such hearing the city council shall investigate and consider the matter, and shall hear the testimony and evidence on the part of the parties interested, and thereupon, after hearing the same, may, by resolution passed by a three-fourths vote of all the members, elect and declare the streets vacated.

The question whether the petition in any particular case is signed by a majority of the owners of property along the line of the street to be vacated is one of fact for the decision of the city council. This necessarily follows from the charter provisions.  The duty is laid upon the city council to investigate, hear evidence, if necessary, and consider and determine whether the petition is signed by the requisite number of petitioners.  No other board or tribunal has original jurisdiction to decide the question; hence the decision of the city council cannot, in the absence of fraud, be reviewed and set aside, except in direct proceedings, by appeal, if given by statute, or certiorari.  It would result in vexatious litigation and great injustice if orders laying out or vacating streets or highways, or establishing county ditches, could be attacked collaterally and set aside by showing that the tribunal or board charged with such duties erroneously decided some question of fact which necessarily preceded and was essential to the making of the order.  Burkleo v. County of Washington, 38 Minn. 441, 443, 38 N. W. 108; Hurst v. Town of Martinsburg, 80 Minn. 40, 82 N. W. 1099; State v. School District, 85 Minn. 230, 88 N. W. 751; Hause v. City of St. Paul, 94 Minn. 115, 102 N. W. 221; State v. Board of Park Commrs. of City of Minneapolis, 100 Minn. 150, 110 N. W. 1121, 9 L.R.A.(N.S.) 1045; Baker v. Board of Supervisors, 40 Iowa, 226; Oliver v. Monona County, 117 Iowa, 43, 90 N. W. 510; Gilkey v. Inhabitants, 141 Mass. 317, 5 N. E. 152.

We hold that the trial court did not err in sustaining the plaintiff's objection to the offer to show that the petition was not signed by the necessary number of landowners.

The defendant also offered to prove that the value of the premises vacated, as determined by the city council, was less than a tenth part of the proportionate average value of the abutting property ac-

cording to the last previous assessment for taxation, as required by Laws 1895, p. 70, c. 8, § 151. The plaintiff objected to the offer, the objection was sustained ánd the ruling is here assigned as error. The ruling was correct.

The city council ascertained and determined the amount to be paid by the abutting owners. The award was paid to the city, and the money has ever since been retained by it. It would seem that the city had waived its right to question the amount awarded by the city council. See State v. School District, supra. Again, the ascertainment of the amount to be paid was a question for the city council, and, if it erred in so doing, its findings could be reviewed and set aside only in a direct proceeding, for the reasons already stated.

It is further urged by the city that the finding of the trial court to the effect that the portions of the streets in question were duly vacated is not justified. by the evidence. If the evidence received relevant to the vacation was properly admitted, it was sufficient to sustain the findings; but it is claimed that the court erred in receiving certain documentary evidence, which was duly objected to and the objections overruled. The rulings are assigned in detail as error. We have considered each of them. It is apparent from the record that the plaintiff was embarrassed in proving, by secondary evidence, the vacation proceedings, by reason of the loss of the original papers and records. It may be conceded that technical errors were made in some of the rulings, but upon a consideration of the whole evidence we find no reversible errors in any of the rulings.