# LILLIAN BOSELL v. A. A. RANNESTAD.[1]

June 18, 1948.

No. 34,652.

---

[1]Reported in 33 N. W. (2d) 40.

414

Fred A. Ossanna, Irving H. Green, and S. A. Weisman, for appellant.

Freeman & King and Ira C. Peterson, Jr., for respondent.

KNUTSON, JUSTICE.

Plaintiff appeals from an order denying her motion for a new trial after a verdict for defendant.

Plaintiff seeks to recover for personal injuries alleged to have been sustained as a result of a collision between an automobile in which she was riding as a passenger and one driven by defendant. The collision occurred at the intersection of Monroe street and Twenty-seventh avenue northeast in the city of Minneapolis.

Twenty-seventh avenue runs in an easterly and westerly direction. To the south of Twenty-seventh avenue, Monroe street runs in a southerly direction. It does not run north of Twenty-seventh avenue, but, continuing north from Twenty-seventh avenue and in a direct line with Monroe street, there is an improved road or highway extending approximately 150 feet. For convenience, we shall refer to this road or highway as the "roadway." At the northwest corner of the intersection so formed are located the Shoreham yards of the Soo Line railway. Along the west side of this roadway and north of Twenty-seventh avenue the Shoreham yards are enclosed by a high wire fence. That part of the Shoreham yards adjacent to the intersection is used for the storage of poles, rails, ties, and other material. There are no tracks on the property near the intersection, nor is there any roadbed located thereon. About 150 feet north of the intersection and across the roadway there is a gate through which en-

trance is gained to the Shoreham yards, on which hangs a sign reading "Private. Keep Out." It is conceded that the west half, or slightly more than half, of the roadway is upon Soo Line property. The east portion of the roadway is dedicated to the public for use as a street.

At the northeast corner of the intersection there are two houses fronting on Twenty-seventh avenue. About 112 feet north of Twenty-seventh avenue there is another residence, owned by one Swanson, fronting on the east side of the roadway. There is a four-foot hedge parallel with the east side of the roadway commencing north of the Swanson property and running south to the north line of Twenty-seventh avenue and thence east for some distance. There is a driveway from the roadway into the Swanson residence, and another running off the roadway to the residence property on the corner. This roadway is the only means of ingress and egress to and from the Swanson property. Swanson has lived in this house and used the roadway for ingress and egress to and from his home for over 11 years. Others have used it in calling at the Swanson home. Prior to that time, Swanson's predecessors used the roadway for many years. To all outward appearances, the roadway north of Twenty-seventh avenue is a continuation of Monroe street. So far as appears from the record, it is open to the public for use without restriction of any kind. It has been improved and maintained largely by the Soo Line railway. It was oiled by the Soo Line in 1945. The city of Minneapolis and the Soo Line have both at various times plowed snow from it.

Plaintiff and defendant were both employed by the Soo Line railway. Defendant left the Shoreham yards in his automobile through the gate at the north end of the roadway at the end of the day's work on June 19, 1944. He proceeded south along his right, or the west side of the roadway, toward Twenty-seventh avenue. When about 50 feet from the intersection, he looked to his right and observed a car approaching the intersection about 150 feet to the west of the intersection. He did not again look to the west. The obstruction caused by the house and the hedge at the northeast corner has

made it a blind corner. Defendant continued to look to the east and south and approached and entered the intersection at about 15 to 18 miles per hour. When the front end of his car was about even with the south line of the intersection the right rear end of it was struck by the car in which plaintiff was riding, then being driven by one Elaine Carlson. Defendant's car was pushed to the east, and it tipped over onto the curb at the southeast corner of the intersection. It came to rest lying on its side on the curb. Defendant, who was rendered unconscious and taken to a hospital, has no further recollection of what took place.

Two eyewitnesses to the collision testified, and the jury could find, that the vehicle in which plaintiff was riding, at the time it was observed by defendant to be about 150 feet west of the intersection, was traveling at a rate of about 40 miles per hour, and that it continued to travel at that rate of speed until the moment of the impact; that defendant was traveling at the rate of 15 to 18 miles per hour; and that he entered the intersection first. Defendant did not stop his car before proceeding into the intersection. There is no evidence of any stop signs on any side of the intersection.

Plaintiff contends that defendant approached and entered the intersection involved from a private roadway, and, as such, was required to yield the right of way to all vehicles approaching on Twenty-seventh avenue northeast under and in conformity with M. S. A. 169.20, subd. 4, which reads:

"The driver of a vehicle entering or crossing a highway from a private road or driveway shall yield the right of way to all vehicles approaching on such highway."

Plaintiff also contends that defendant was required to come to a full stop before entering the intersection, under § 169.31, which reads as follows:

"The driver of a vehicle within a business or residence district emerging from an alley, driveway, or building shall stop such vehicle immediately prior to driving onto a sidewalk or into the sidewalk area extending across any alleyway or private driveway."

Section 169.01, subd. 30, defines a private road or driveway thus:

"Every way or place in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner, but not by other persons."

It is doubtful whether the roadway involved in this case can come within the above definition at all, or whether § 169.20, subd. 4, or § 169.31 have any application to the facts here involved. It can hardly be successfully contended that no other persons than the owner or those having express or implied permission from the owner used this roadway. A substantial portion was concededly dedicated to the public. Had defendant driven on the east half instead of the west half of the roadway, there would be no doubt that he was on a public road. The entire roadway was open to and used by the public without objection or restriction on the part of the owner.

"* * * the test to be used in determining whether a given roadway is public or private does not turn upon the amount of travel or use made thereof, but rather upon the right of the public generally to use the way for vehicular traffic." Merritt v. Stuve, 215 Minn. 44, 51, 9 N. W. (2d) 329, 333.

However, the trial court submitted to the jury for its determination the question whether there had been a common-law dedication of the roadway to the public, so we have considered the case as though the roadway would be a private roadway in the absence of such dedication.

Plaintiff relies largely upon §§ 160.19 and 160.20 to support her contention that defendant was upon a private roadway. Section 160.19 provides:

"When any road or portion thereof shall have been used and kept in repair and worked for at least six years continuously as a public highway the same shall be deemed dedicated to the public to the width of two rods on each side of the center line thereof and be and remain, until lawfully vacated, a public road whether the same has ever been established as a public highway or not."

Section 160.20 provides:

"The continued use of any road by the public upon and parallel to the right of way of any railway company shall not constitute such road a legal highway or a charge upon the town in which the same is situated, and no right shall accrue to the public or any individual by such use."

Section 160.20 is not applicable. The roadway here involved was not upon and parallel to the right of way of any railway company. It was partly upon and parallel to railway property used for storage purposes. There is no evidence of any tracks upon such property, nor does it appear that it was ever used for right-of-way purposes.

"* * * the term 'right of way' has a twofold signification. It sometimes is used to describe a right belonging to a party, a right of passage over any tract; and it is also used to describe that strip of land which railroad companies take upon which to construct their road-bed." Joy v. St. Louis, 138 U. S. 1, 44, 11 S. Ct. 243, 256, 34 L. ed. 843, 857.

1. Plaintiff seems to confuse a dedication of a public road by statutory user, under § 160.19, and a common-law dedication. Section 160.19 is not exclusive and did not supersede the common-law rule of dedication of a highway to public use. Klenk v. Town of Walnut Lake, 51 Minn. 381, 53 N. W. 703.

2. The rules for the establishment of a public highway by common-law dedication have been fully stated in Keiter v. Berge, 219 Minn. 374, 18 N. W. (2d) 35. We see no need to restate them here.

3. While it is necessary, in order to establish a public highway by statutory user under § 160.19, to show that the highway has been used by the public and also that it has been kept in repair by the public at public expense for the prescribed period, Minneapolis Brg. Co. v. City of East Grand Forks, 118 Minn. 467, 136 N. W. 1103; Town of Wells v. Sullivan, 125 Minn. 353, 147 N. W. 244; Whiteley v. Strickler, 159 Minn. 145, 198 N. W. 420, it is not necessary, in order to establish a common-law dedication of a highway, that the public keep the road in repair. Carpenter v. Gantzer, 164 Minn. 105,

204 N. W. 550; Rose v. Village of Elizabethtown, 275 Ill. 167, 114 N. E. 14; Dickinson v. Ruble, 211 Minn. 373, 1 N. W. (2d) 373; Keiter v. Berge, 219 Minn. 374, 18 N. W. (2d) 35.

4. The intent of the owner to dedicate a road may be implied from a long-time use by the public, Case v. Favier, 12 Minn. 48 (89); Dickinson v. Ruble, *supra*.

The road here involved was open to and used by the public indiscriminately. At least the east half, or nearly half, of it was dedicated to the public. At least one house was built facing the roadway and has remained in its present location for many years. The roadway is the only means of ingress and egress to and from such house. Where the evidence is conflicting as to whether or not there has been a dedication of a roadway to the public, the question is one for the jury. The trial court correctly submitted to the jury the rules pertaining to the establishment of a highway by common-law dedication, and we find no error therein that would be prejudicial to plaintiff.

The facts in this case are clearly distinguishable from those in Boerner v. Wiemann, 206 Minn. 548, 289 N. W. 562, and Merritt v. Stuve, 215 Minn. 44, 9 N. W. (2d) 329, cited by and relied upon by plaintiff. In both of these cases the trial court determined as a matter of law that defendants were upon a private driveway. They entered the highway from such private driveway directly in the face of oncoming traffic and under such circumstances that a collision was inevitable. The plaintiff in both cases was driving at a lawful rate of speed. Under the circumstances, the negligence of the defendant was apparent. In the case before us, the jury could well find that the driver of the vehicle in which plaintiff was riding was driving at an unlawful rate of speed and had forfeited any right of way which she may have had under § 169.20, subd. 1. The evidence also presented a fact question as to whether defendant was justified in assuming that it was safe for him to enter and cross the intersection.

The case of Packar v. Brooks, 211 Minn. 99, 300 N. W. 400, is more nearly in point. In Schnore v. Baldwin, 217 Minn. 394, 398, 14 N. W. (2d) 447, 450, we held that mere violation of the statute

here involved did not constitute negligence as a matter of law. We said: "It was for the jury to determine whether any statutory violation was the proximate cause of the accident."

5. Plaintiff next contends that the automobile in which plaintiff was riding was to the right of defendant as it approached the intersection, and, as such, under § 169.20, subd. 1, that defendant was required to yield the right of way.

In Moore v. Kujath, 225 Minn. 107, 111, 29 N. W. (2d) 883, 886, we held that the first part of § 169.20, subd. 1, reading: "The driver of a vehicle approaching an intersection shall yield the right'of way to a vehicle which has entered the intersection from a different highway," must be interpreted in the light of the following part of said statute, which reads: "When two vehicles enter an intersection from different highways at approximately the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right," and that, as so interpreted, the word "approximately" means that if two vehicles approach an intersection so nearly at the same time that there will be imminent hazard of a collision if both continue the same course at the same speed they are approaching the intersection at approximately the same time, and the vehicle to the left must yield the right of way to that on the right. This definition was followed in Delyea v. Goossen, 226 Minn. 91, 32 N. W. (2d) 179, and again in Mattfeld v. Nester, 226 Minn. 106, 32 N. W. (2d) 291. However, this rule cannot be arbitrarily applied without reference to the circumstances in each individual case. Whether the rule has been violated is usually a fact question for the jury. Mattfeld v. Nester, *supra;* Jeddeloh v. Hockenhull, 219 Minn. 541, 18 N. W. (2d) 582.

The driver of a vehicle to the left has a right to assume, until and unless he becomes aware to the contrary, that the driver to the right will exercise ordinary care. Montague v. Loose-Wiles Biscuit Co. 194 Minn. 546, 261 N. W. 188.

Here, the jury could find that when defendant was 50 feet from the intersection he looked to his right and observed the vehicle in which plaintiff was riding approaching at a distance of about 150

feet away. He continued at a speed of 15 to 18 miles per hour and had practically crossed the intersection when his car was struck at its right rear side by the car in which plaintiff was riding. The jury could also find that the driver of the car in which plaintiff was riding was proceeding at an unlawful and unreasonable rate of speed and that defendant was guilty of no negligence. Defendant's view to his left was obstructed by houses and a hedge, which required more than ordinary care in observing approaching traffic from that direction. His view to his right was open, and it was for the jury to say whether he was justified in assuming that it was safe to enter and cross the intersection. "Due care is not determined by the number of times the driver looked, nor by how often, or when, or from where." Kraus v. Saffert, 208 Minn. 220, 225, 293 N. W. 253, 255. See, also, Norling v. Stempf, 208 Minn. 143, 293 N. W. 250.

The question of defendant's negligence, under the circumstances existing in this case, was for the jury.

6. Plaintiff assigns as error the refusal of the trial court to permit her to show on cross-examination of defendant's witness Holick, who was riding with defendant at the time of the collision, that the witness had made a claim against defendant for injuries received in the collision and that defendant had made a settlement with him.

Prior inconsistent statements are always admissible to impeach a witness. Before they become admissible, however, it must appear that there is an inconsistency. O'Neill v. Minneapolis St. Ry. Co. 213 Minn. 514, 7 N. W. (2d) 665; State v. Gallehugh, 89 Minn. 212, 94 N. W. 723; 70 C. J., Witnesses, § 1241; 3 Wigmore, Evidence (3 ed.) § 1040.

Holick's testimony was very limited. With respect to the accident, he testified that he was riding in defendant's automobile at the time of the collision; that defendant drove 15 to 18 miles per hour as they left the gate and about the same speed as they entered the intersection; that witness was looking straight ahead; that when they were about three-fourths of the way through the intersection he heard a big crash on the back of the automobile and it was tipped

over; and that he became unconscious and knew no more. Nowhere in his testimony does he claim that defendant was not guilty of negligence. He apparently did not see the automobile in which plaintiff was riding at any time prior to the collision. The offered proof would have no value as impeaching testimony, and it was properly excluded.

We have held in Esser v. Brophey, 212 Minn. 194, 3 N. W. (2d) 3, that such evidence was inadmissible for the purpose of showing liability on the part of defendant or hostility of the witness toward the defendant. There being no inconsistency between the offered proof and the testimony of the witness at the time of the trial, the evidence offered would be inadmissible on any ground.

We have examined all other assignments of error, but find nothing therein that would justify a new trial.

Affirmed.

