**John Wesley HEBERT,
et al., Appellants,**

v.

**CITY OF FIFTY LAKES, Respondent.**

No. A09–1414.

Court of Appeals of Minnesota.

July 13, 2010.

Scott M. Lucas, Shaun D. Redford, Olson & Lucas, P.A., Edina, MN, for appellants.

Paul D. Reuvers, Susan M. Tindal, Iverson Reuvers, Bloomington, MN, for respondent.

Susan L. Naughton, League of Minnesota Cities, St. Paul, MN, for amicus curiae.

Considered and decided by
HALBROOKS, Presiding Judge;
WORKE, Judge; and WILLIS, Judge.*

## OPINION

WORKE, Judge.

On appeal after a prior remand in this land-dispute case, appellant landowners argue that the district court erred by (1)

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

granting summary judgment in favor of respondent city because either the road deviation is exempted from the user statute as a "platted city street" or because statutory and common-law dedication cannot be applied to Torrens properties, and (2) denying their motion for summary judgment on their trespass and ejectment claims. We affirm the district court's denial of appellants' summary-judgment motion. But because we conclude that statutory dedication is a form of adverse possession prohibited by the Torrens Act, we reverse and remand.

## FACTS

Appellants John Wesley Hebert and nine other landowners own six lots adjacent to Mitchell Lake located in respondent city, City of Fifty Lakes (the city). The lots were duly registered as Torrens properties in 1953. In 1954, the city dedicated a 66–foot–wide roadway, known as North Mitchell Lake Road, around the lots by recording the plat with the county registrar's office. The road featured a steep hill that was difficult for cars to traverse. The road was also extremely narrow, preventing two cars traveling in opposite directions from passing each other without one car pulling over to the side of the road. The road was rebuilt in 1971 to flatten the slope of the hill and to widen the lanes, and the city completed the reconstruction by providing a gravel base for the road. In rebuilding the road, however, the city deviated from the platted and dedicated road, encroaching on appellants' lots. The exact encroachment varied by lot, ranging between 29 and 49 feet.

The road remained unchanged, aside from routine maintenance performed by the city. The road has been regularly and continuously used by the public; it is the only access for residents living on the north shore of Mitchell Lake, serves as a school-bus route, and is used by postal carriers and waste-management services.

The city never initiated an eminent-domain proceeding nor has the city compensated appellants or asked for their permission for the deviation from the platted area. No resident complained about the road deviating from the platted area before 1998.

In 2005, appellants sought a declaratory judgment that the road impermissibly encroaches on their properties. Appellants also requested equitable relief, seeking ejectment and damages for trespass. The city moved for dismissal for failure to state a claim upon which relief may be granted under Minn. R. Civ. P. 12.02(e), arguing that the property was acquired by virtue of a de facto taking or, alternatively, that appellants' claims were time-barred. The district court granted the city's motion, concluding that the city properly demonstrated a de facto taking triggering a 15–year statute of limitations. Appellants initially argued that the district court abused its discretion in dismissing the complaint because the city's actions did not amount to a de facto taking. We reversed and remanded the case, concluding that no de facto taking occurred and thus appellants' claim was not time-barred; the supreme court affirmed our decision. *Hebert v. City of Fifty Lakes*, 744 N.W.2d 226, 236 (Minn.2008).

On remand, the city moved for summary judgment, arguing that it validly obtained the property through statutory dedication. Appellants also moved for partial summary judgment, asserting that they are the true owners of the properties and entitled to equitable relief. The district court granted summary judgment in favor of the city, concluding that the city properly demonstrated statutory dedication. The district court summarily dismissed appellants' summary-judgment motion. This appeal follows.

## ISSUES

I. Did the district court err by ordering summary judgment in favor of the city on the grounds of statutory dedication of the road?

II. Did the district court err by denying partial summary judgment in favor of appellants on the grounds of a continuing trespass and the city's laches defense?

## ANALYSIS

When reviewing a grant of summary judgment, this court determines whether there are genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). Summary judgment is appropriately granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993) (citing Minn. R. Civ. P. 56.03). "We view the evidence in the light most favorable to the party against whom summary judgment was granted." *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.,* 644 N.W.2d 72, 76–77 (Minn.2002). Whether a genuine issue of material fact exists and whether the district court erred in its application of the law is reviewed de novo. *Id.* at 77. We may affirm summary judgment if it can be sustained on any ground. *Winkler v. Magnuson,* 539 N.W.2d 821, 827 (Minn.App.1995), *review denied* (Minn. Feb. 13, 1996).

## I. *The City's Summary–Judgment Motion*

The district court granted summary judgment in favor of the city for two reasons. First, the court concluded that the road was validly dedicated under Minn. Stat. § 160.05, subd. 1 (2008) (the user statute) due to the public's continuous use and the city's continuous maintenance. Second, the court determined that the user statute is applicable to Torrens properties.

### *User–Statute Exemption*

■ Appellants first argue that the district court erred because the user statute does not apply to the road. The user statute provides:

> When any road or portion of a road has been used and kept in repair and worked for at least six years continuously as a public highway by a road authority, it shall be deemed dedicated to the public to the width of the actual use and be and remain, until lawfully vacated, a public highway whether it has ever been established as a public highway or not.... This subdivision shall apply to roads and streets except platted streets within cities.

Minn.Stat. § 160.05, subd. 1. The district court concluded that "the plain language of the [user] statute allows statutory dedication of deviations from plats because the portions of the road that deviated from the platted path, by their very nature, are not platted."

Appellants claim that the district court erred by concluding that the road is not a "platted street" exempt from the user statute, either because the original road was platted by the city or because the deviation encroaches onto their platted properties. Neither distinction is persuasive. A "plat" is defined as "a delineation of one or more existing parcels of land drawn to scale showing all data as required by this chapter, depicting the location and boundaries of lots, blocks, outlots, parks, and public ways." Minn.Stat. § 505.01, subd. 3(f) (2008); *see also Kane v. State,* 237 Minn. 261, 268, 55 N.W.2d 333, 337 (1952) (stating that platting "implies that the land had been surveyed, and that such survey was marked on the ground, so that the streets,

blocks, and lots could be identified"). An essential characteristic of a platted property is a clear demarcation of ownership interests. *See* Minn.Stat. § 505.021, subd. 3 (2008) (requiring the "names and signatures of all fee owners, contract for deed venders, and mortgage holders" of record to appear on the plat). Thus, platting is a legal process to mark property rights.

The road was platted by the city in 1954. But the 1971 deviation was never platted by the city. And any subsequent appearance of the gravel deviation from the original municipal plat on a private plat cannot be said to be "platted" because the city never asserted or was attributed ownership rights to this deviation on a plat. Accordingly, the district court did not err by concluding that "deviat[ions] from the platted path, by their very nature, are not platted," and the gravel deviation is not an exempted "platted city road" under the user statute.

Appellants also argue that the district court's interpretation of the user statute produces a bizarre result rendering the final sentence of the statute surplusage. *See* Minn.Stat. § 645.16 (2008) (requiring construction of a law, "if possible, to give effect to all its provisions"); *Cohen v. Gould,* 177 Minn. 398, 405, 225 N.W. 435, 438 (1929) (stating that "we must, if possible, avoid an interpretation which renders a complete sentence of [a] statute surplusage and so in effect amends the law by striking out that sentence"). If a deviation from a platted road, such as at issue here, is not included in the exception for "platted streets within cities," appellants argue that the city would only be prevented from using statutory dedication on platted city streets that it already owns. Because the city would never need to seek statutory dedication for a street it already owns, appellants argue that the district court's interpretation renders the last sentence meaningless. But appellants mistakenly read "platted streets within cities" to include solely *public* streets; as the city points out, the exception still applies to a private, platted street within a city. The district court's interpretation that the user statute may apply to a deviation from a platted road does not affect the exemption of a private, platted road within a city from the user statute. Accordingly, this interpretation does not render the final sentence surplusage.

*Application of User Statute to Torrens Property*

■ Because the road is not exempted from the user statute, we next consider whether the user statute can apply to Torrens properties in general. The district court concluded that the user statute applies to Torrens properties, based on the lack of a specific exclusion for Torrens properties in the statute and because the court determined that statutory dedication is different from adverse possession prohibited under the Torrens Act.

"When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000) (quotation and citation omitted). "Under the basic canons of statutory construction, we are to construe words and phrases according to rules of grammar and according to their most natural and obvious usage . . ." *ILHC of Eagan, LLC v. County of Dakota,* 693 N.W.2d 412, 419 (Minn.2005).

The district court correctly noted that "[t]he [user] statute does not contain an exception for Torrens property." But the absence of a specific exception for Torrens properties in the user statute does not take priority over the specific provisions of the Torrens Act, which governs matters

related to Torrens properties. Minn.Stat. §§ 508.01 to .84 (2008); *see also* Minn.Stat. § 645.26, subd. 1 (2008) (specific statute governs over more general statute).

Minn.Stat. § 508.02 provides that "[r]egistered land shall be subject to the same burdens and incidents which attach by law to unregistered land. . . . No title to registered land in derogation of that of the registered owner shall be acquired by prescription or by adverse possession." Similarly, the specific rights of a person holding a certificate of title to a Torrens property are governed by Minn.Stat. § 508.25:

> Every person receiving a certificate of title . . . shall hold it free *from all encumbrances and adverse claims*, excepting only the estates, mortgages, liens, charges, and interests as may be noted in the last certificate of title in the office of the registrar, and also excepting any of the following rights or encumbrances subsisting against it, if any: . . . . [1]

(Emphasis added.) Accordingly, if statutory dedication is a form of adverse possession, statutory dedication cannot occur with Torrens properties.

*Adverse Possession*

In concluding that statutory dedication is not akin to adverse possession prohibited by the Torrens Act, the district court relied on the differences between the two doctrines, specifically the elements of each action. In order to establish a prima facie case of statutory dedication under the user statute, a road must have been "(1) use[d] by the public and (2) maint[ained] by an appropriate government agency (3) over a continuous period of at least six

years." *Foster v. Bergstrom,* 515 N.W.2d 581, 585–86 (Minn.App.1994). An adverse-possession action requires two elements: (1) "an actual, open, continuous, exclusive, and hostile use" (2) for a period of 15 years. *Rogers v. Moore,* 603 N.W.2d 650, 657 (Minn.1999). But while the elements of each claim are different, this fact alone is not dispositive.

On the first appeal of this case, the supreme court addressed whether a de facto taking is tantamount to adverse possession. *Hebert,* 744 N.W.2d at 231–32. The supreme court noted that the Torrens Act does not contain an explicit provision governing whether a de facto taking of a Torrens property is permissible, but the supreme court looked for guidance to the language of Minn.Stat. § 508.02 allowing eminent domain and disallowing adverse possession. *Id.* After concluding that a de facto taking of a Torrens property is at odds with the general notice principles of the Torrens Act, the supreme court concluded that "allowing the [c]ity to acquire the land at issue here by de facto taking would operate in the same way as if the [c]ity acquired the land by adverse possession in that in both situations, a landowner is deprived of rights to land due to actions of another." *Id.* The supreme court acknowledged the different elements of each claim, yet still looked to the practical operation to assess whether the two actions are related. Thus, our analysis is similarly focused on the operation of statutory dedication compared to adverse possession.

The supreme court first analyzed the user statute in 1892, 15 years after the statute was amended in 1877 to include the

---

1. Minn.Stat. § 508.25 lists seven additional exceptions that may encumber an interest despite failing to appear on a certificate of title, including "public highways." But this exception applies to public highways existing prior to the registration of a Torrens property and, therefore, is not applicable here. *See*

*Anderson v. Birkeland,* 229 Minn. 77, 86, 38 N.W.2d 215, 221 (1949) (stating that Minn. Stat. § 508.25 "specifically provides that all rights in public highways upon the land shall remain unimpaired by Torrens registration proceedings").

six-year requirements of maintenance and continuous use. *Marchand v. Town of Maple Grove*, 48 Minn. 271, 274, 51 N.W. 606, 607 (1892). In *Marchand,* the issue was the legitimacy of a public highway established through statutory dedication on private land by virtue of prescription. *Id.,* 51 N.W. at 606. The court described the 1877 amendment to the user statute as two wholly disconnected sentences, the second being a "distinct[ ] and complete sentence[ ] relating to the acquiring of public [roads] by [the] user . . . predicated, and only justifiable, upon a claim of actual adverse possession, occupation, and improvement for the period of six continuous years." *Id.* at 274–75, 51 N.W. at 607.

The supreme court next addressed the issue of statutory dedication in 1912. *Minneapolis Brewing Co. v. City of E. Grand Forks,* 118 Minn. 467, 136 N.W. 1103 (1912). *Minneapolis Brewing Co.* involved a city seeking to establish roads on a company's private property as dedicated under the user statute. *Id.* at 468, 136 N.W. at 1103. The supreme court noted that

> It is obvious, from a reading of the statute and a consideration of the decisions of this court construing it, that mere use of premises for public travel is not sufficient to put the statute in motion. Such use is only one of the essential conditions of adverse possession by the public. The other is that some portion at least of the alleged highway must have been worked [on] or repaired at least six years before a highway by statutory adverse user can be successfully asserted.

*Id.* at 471, 136 N.W. at 1104.

More recently, the supreme court characterized the user statute as a "substitute" relief for an adverse-possession claim. *Barfnecht v. Town Bd. of Hollywood Twp.,* 304 Minn. 505, 505, 232 N.W.2d 420, 422 (1975). The issue addressed in *Barfnecht*

was "whether [the user statute], if construed to extend public dedication of a road to a width . . . [greater than] the extent of actual use, results in a taking of private property without due process of law." *Id.* The supreme court held that "[a]s a substitute for common-law creation of highways by prescription or adverse use, the [user] statute provides [a] method for acquisition of highways by adverse public use." *Id.*

This rationale was repeated by the supreme court five years later when the court explained that the user statute "provides no method by which government can *take* property. The statute, rather, provides a substitute for the common-law creation of highways by prescription or adverse use." *Shinneman v. Arago Twp.,* 288 N.W.2d 239, 243 (Minn.1980) (citing *Barfnecht,* 304 Minn. at 506, 232 N.W.2d at 422). *Shinneman* involved a citizen petitioning a city to vacate a road on his unregistered property that had never been officially dedicated. *Id.* at 240. In concluding that statutory dedication occurred, the court likened the process to the forfeiture of rights associated with adverse possession: "After six years have passed, [ ] [the landowner] is estopped from asserting [ownership] rights. The township and the public acquire rights not because they take them, but because the landowner forfeits them by failing to act within the prescribed period." *Id.* at 243.

The city argues that these cases analogize statutory dedication to adverse possession only in dicta and cites instead to authority from other jurisdictions. *See, e.g., Carter v. Michel,* 403 Ill. 610, 87 N.E.2d 759, 764 (1949) (concluding that an easement was valid despite not appearing on the certificate of title); *Duddy v. Mankewich,* 75 Mass.App.Ct. 62, 912 N.E.2d 1, 5–6 (2009) (concluding that Torrens landowners intended to give an ease-

ment in a subdivided lot for the benefits of the other subdivisions despite the easement not appearing on the certificate of title), *review denied* (Mass. Oct. 29, 2009). These cases lack precedential value because they are from other jurisdictions. *See Mahowald v. Minn. Gas Co.,* 344 N.W.2d 856, 861 (Minn.1984) (acknowledging that foreign authorities can be persuasive but are not binding). Moreover, these cases concern easement disputes between private citizens, not statutory-dedication disputes between private parties and a municipality; thus, they are not persuasive. Accordingly, the city fails to diminish the persuasive authority of the line of relevant Minnesota cases analogizing statutory dedication to adverse possession, albeit in dicta.

Because recent supreme court precedent *in this case* instructs us to look to the operation of an action when comparing it to adverse possession prohibited by the Torrens Act, and because statutory dedication operates fundamentally similar to adverse possession, we conclude that statutory dedication is prohibited by the Torrens Act. The district court, therefore, erred in concluding that statutory dedication of Torrens property was permissible.

*Common–Law Dedication*

■■ The city alternatively argues that even if we hold that the statutory dedication of a Torrens property is impermissible, it is still the rightful owner of the road by virtue of common-law dedication. Common-law dedication requires the demonstration of "the landowner's intent, express or implied, to have his land appropriated and devoted to a public use, and an acceptance of that use by the public." *Barth v. Stenwick,* 761 N.W.2d 502, 511 (Minn.App. 2009). The district court did not reach the issue of common-law dedication, presumably because it relied on statutory dedication. The city does not argue that appellants ever expressly indicated their intent to dedicate the property, nor is there any evidence in the record to support such a contention. Instead, the city argues that appellants impliedly intended for their property to be dedicated to the public by allowing the road to deviate onto their property.

But if statutory dedication is tantamount to adverse possession, common-law dedication based on an implied intent to dedicate is prohibited under the Torrens Act as well. As the supreme court held in *Moore v. Henricksen,* "[s]ince, by [Minn.Stat. § ] 508.02, possession may not ripen into title against the holder of a registration certificate, a purchaser has no reason to assume that possession is adverse to the registered title." 282 Minn. 509, 520, 165 N.W.2d 209, 218 (1968). Thus, even if a landowner is aware of another's possession or use of his Torrens property—which is the nature of an implied intent to dedicate—this awareness does not diminish the owner's interest in the Torrens property. *See id.* (concluding that use of the property by another for 30 years did not diminish the owner's property interests). The city's assertion that common-law dedication occurred is unavailing, and the district court's grant of the city's summary-judgment motion was erroneous.

## II. *Appellants' Summary–Judgment Motion*

The district court dismissed appellants' motion for partial summary judgment, noting simply that there remain genuine issues of material fact in dispute regarding "whether the public road represents a permanent or continuing trespass," and "whether [appellants'] claim of ejectment is barred by laches." Appellants argue that they are entitled to summary judgment as a matter of law on both claims.

*Trespass Claim*

■ Appellants assert that the district court improperly dismissed their summary-judgment motion on the trespass claim because they demonstrated that the city is engaged in a continuous trespass as a matter of law. The significant difference between a continuing trespass and a permanent trespass is the differing statutes of limitation for each claim. *See* Minn.Stat. § 541.05, subd. 1(3) (2008) (six-year statute of limitations for permanent trespass on real property); *N. States Power Co. v. Franklin*, 265 Minn. 391, 397, 122 N.W.2d 26, 30–31 (1963) (holding that, in the case of a continuing trespass, the statute of limitations does not run from the initial trespass).

■ The test to determine the nature of a trespass is whether the injury complained of "results from the original wrongful act, or from the wrongful continuance of . . . such act." *Bowers v. Mississippi & Rum River Boom Co.*, 78 Minn. 398, 402, 81 N.W. 208, 209 (1899). On the first appeal of this case, the supreme court noted that, "[i]f the wrong complained of is the act of the [c]ity in constructing the gravel road, the trespass is permanent. . . . [o]n the other hand, if the wrong complained of is some continuing or recurring intrusion onto the landowners' property, the trespass is continuing." *Hebert*, 744 N.W.2d at 234. The court noted that "whether a trespass is continuing is not always purely a question of law" and remanded the issue to the district court. *Id.* at 235, 236.

■ Appellants contend that the factual record was developed on remand, and they are entitled to summary judgment for two reasons: first, because appellants demanded that the city cease its trespass, the trespass was continuous in nature; and second, the public use of the road is continuous, evidencing a continuous trespass. The trespass issue was originally argued as part of a motion to dismiss for failure to state a claim upon which relief may be granted, and the supreme court remanded the issue to determine whether the wrong complained of was the actual creation of the gravel road or the continuing use of it. The district court determined that genuine issues of material fact remained as to whether the road represents a permanent or continuing trespass. Ordinarily, a district court's determination that summary judgment is precluded by the existence of genuine fact issues "constitutes a determination that the [resisting party] [ ] produced sufficient evidence on the merits of [the claim] to survive a motion for summary judgment. And the decision that claims are sufficiently proven to create a genuine fact issue is ordinarily not an appealable order." *Carter v. Cole*, 526 N.W.2d 209, 212–13 (Minn.App.1995), *aff'd*, 539 N.W.2d 241 (Minn.1995). As such, the district court did not err by denying appellants' motion for summary judgment on the trespass claim.

*Ejectment Claim*

■ Appellants next argue that the district court erred by failing to grant summary judgment on their ejectment claim. The district court denied the motion, concluding that issues of material fact existed regarding whether the claim was barred by laches, as argued by the city. "Laches is an equitable doctrine applied to prevent one who has not been diligent in asserting a known right from recovering at the expense of one who has been prejudiced by the delay." *Winters v. Kiffmeyer*, 650 N.W.2d 167, 169 (Minn.2002) (quotation omitted). The doctrine is intended to "promote vigilance and to discourage delay." *State ex rel. Sawyer v. Mangni*, 231 Minn. 457, 468, 43 N.W.2d 775, 781 (1950). The supreme court has consistently held that when an action is governed by a statute of limitations, the doctrine of

laches does not apply. *M.A.D. v. P.R.*, 277 N.W.2d 27, 29 (Minn.1979); *Aronovitch v. Levy*, 238 Minn. 237, 241, 56 N.W.2d 570, 574 (1953). This rule applies to equitable actions unless it can be shown that the delay would result in substantial injury to innocent parties. *Aronovitch*, 238 Minn. at 241, 56 N.W.2d at 574.

The city argues that the district court appropriately denied appellants' summary-judgment motion because material fact issues exist as to whether appellants unreasonably and inexcusably delayed the filing of this litigation and whether the city was prejudiced by the delay. Because these are material issues of fact that remain in dispute, the district court did not err by denying appellants' motion for summary judgment.

## DECISION

We affirm the district court's denial of appellants' summary-judgment motion. But because we conclude that statutory dedication under Minn.Stat. § 160.05, subd. 1, is a form of adverse possession and may not be applied to Torrens properties, we reverse the decision of the district court granting the city's summary-judgment motion and remand for further proceedings.

**Affirmed in part, reversed in part, and remanded.**